IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Gregory Boyer, as Administrator of the Estate of Christine Boyer, and on his own behalf,<br><br>Plaintiff,<br><br>v.<br><br>USA Medical & Psychological Staffing, S.C., *et al.*,<br><br>Defendants. | Case No: 3:22-cv-00723-jdp |

**PLAINTIFF'S CORRECTED BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS[1]**

Plaintiff, through his undersigned counsel, submits this memorandum in opposition to the Motion to Dismiss filed by Defendants in this case (also known as, the "USA Medical defendants"), ECF 14, and in response to the arguments advanced in the USA Medical defendants' memorandum in support, ECF 15. The Defendants' motion should be denied in its entirety.

Plaintiff agrees with the USA Medical defendants on a basic point they emphasize throughout their dismissal motion: the complaint in this case is nearly identical to the operative complaint Plaintiff filed in *Boyer v. Advanced Correctional Healthcare, Inc., et al.* (3:20-cv-01123) (*Boyer v. ACH*). It is, Plaintiff can confirm, cut and pasted from the *Boyer v. ACH* operative complaint, modified only to add allegations of the relationship between USA Medical & Psychological Staffing, S.C. ("USA Medical") and Advanced Correctional Healthcare, Inc. ("ACH"), officers and owners of the two companies, and the consequent liability of the USA

---

[1] Plaintiff files this corrected brief to fix a record citation error in the facts section of ECF 17 and to add the ECF number cited on page 15 ¶ 1.

1

Medical defendants for the events alleged in *Boyer v. ACH*. As Plaintiff explains below, this case is filed separately from *Boyer v. ACH* only because ACH objected to modification of the complaint in that case to add the USA Medical defendants there.

As Plaintiff understands it, USA Medical is an entirely fictional entity, a "service corporation" created by ACH and its owners to comply with a requirement in many states that licensed medical professionals may only practice as employees for corporate entities if such entities are also owned by licensed medical professionals. As the USA Medical defendants explain, ECF 15 at 3, ACH did indeed note in its *Boyer v. ACH* answer that defendants Pisney and Fennigkoh were technically employees of USA Medical. But ACH's contract with Monroe County recited that ACH controlled the manner and means by which any subcontractors would work at the jail, and ACH's response to two interrogatories asking it to identify other persons or entities with liability for the alleged events in this case pointed to other individuals, but not USA Medical.

It may therefore be that USA Medical has no role in this case, as the USA Medical defendants assert in support of their motion. ECF 15 at 10. Certainly that is how ACH's contract with Monroe County and its discovery responses made it appear. Plaintiff only sought the contract between ACH and USA Medical in June 2022 as part of several cleanup discovery requests. ACH only produced the contract in late October 2022, after multiple delays and enforcement by Plaintiff's counsel. It was then that Plaintiff learned that the ACH appeared to disavow control of the manner in which USA Medical and its employees performed medical services under the contract. Concerned about the possibility of an "empty chair" if USA Medical were not brought into the case, Plaintiff conducted considerable legal and public records research on the company, and on December 8 proposed to the *Boyer v. ACH* defendants that the USA

2

Medical defendants be added to the case in an amended complaint. In doing so, Plaintiff counsel noted that any burden of additional discovery would be minimal as it would concern only the relationship between USA Medical and ACH—not the events giving rise to the complaint, nor Plaintiff's *Monell* claims in the *Boyer v. ACH* case. The Monroe County defendants reported that they would not oppose a motion to amend, but on December 19, after multiple prompts, counsel for the ACH defendants stated that they would oppose an amendment adding the USA Medical defendants. Only after receiving this response did Plaintiff file the present, separate, action against the USA Medical defendants.

Put simply, this should not be a separate case. The USA Medical defendants are not the primary focus of Plaintiff's claims arising from his wife's death. They have been sued as a measure to prevent the defendants from employing two different corporate forms to escape responsibility in this matter. Otherwise, the claims against USA Medical and ACH are the same—a fact underscored by the USA Medical defendants' Rule 12(b)(6) motion itself. The motion does not attack Plaintiff's allegations about the relationship between USA Medical and ACH. Rather, it tracks the arguments made by the *Monell* defendants in *Boyer v. ACH* in their Rule 12(c) dismissal motions currently pending before the Court in that case. The USA Medical defendants repeat those arguments in a manner so perfunctory as to court waiver, but that reflects the simple reality that Plaintiff's claims against USA Medical will rise or fall with their claims against the *Monell* defendants in *Boyer v. ACH*, on the same grounds and for the same reasons. The USA Medical defendants' arguments are wrong, for the same reason that the arguments made by the *Boyer v. ACH* defendants in their Rule 12(c) motions are wrong, and the Court should reject them for the same reasons. Plaintiff briefly reviews those arguments here.

***First***, the USA Medical defendants argue that Plaintiff failed to allege facts to support any claim that USA Medical was deliberately indifferent to Ms. Boyer's serious medical need. That is incorrect: Plaintiff alleged that USA Medical is inextricably linked with Advanced Correctional Healthcare, which had a cost-saving practice of denying prisoners' emergent care and directing employees to choose the least expensive option when treating patients. ***Second***, the Defendants argue that Plaintiff's Complaint does not demonstrate the existence of a policy or practice that resulted in Ms. Boyer's death. But Plaintiff has alleged that the Defendants have a *de facto* policy of discouraging referrals of people detained in the jail to outside medical providers, even when outside care is medically indicated, to avoid the expense of such outside referrals. Plaintiff supported the claim with multiple other instances of inadequate care, and courts have held that a national vendor like USA Medical's examples of inappropriate medical care at other facilities are relevant to proving a *Monell* claim. ***Third***, the Defendants argue that Plaintiff has not stated state law claims, but this argument ignores Plaintiff's allegations. ***Fourth***, the Defendants argue that Plaintiff's Complaint is a means to avoid the scheduling order in *Boyer v. ACH*. Even if this were correct—and it is not—it does not create grounds for dismissal. And indeed the reality is the opposite: the only discovery that this case adds to *Boyer v. ACH* is on the corporate relationship between the USA Medical defendants and ACH, not any additional discovery about the events giving rise to Plaintiff's claims. That calls for consolidation of the two cases, not dismissal of Plaintiff's claims on case management grounds.

## FACTS

Plaintiff's complaint alleges that Christine Boyer was booked into the Monroe County jail on Saturday, December 21, 2019. *See* ECF 1 ¶¶ 40–41. Medical care for prisoners at Monroe County Jail is provided by Advanced Correctional Healthcare, which outsources or subcontracts

the performance of services that require licensure to practice medicine to Defendant USA Medical. ECF 1 ¶ 27. The Complaint alleges that ACH exercises control over how USA Medical employees perform their medical duties. *Id.* ¶ 28. The Complaint also alleges the multiple ways that ACH and USA Medical are linked. *Id.* ¶¶ 27–38.

When Ms. Boyer was booked at Monroe County Jail, she told staff that she suffered from congestive heart failure and high blood pressure and took numerous medications for these conditions, but that she did not have them with her. ECF 1 ¶¶ 42–43. Jail staff called Lisa Pisney, ACH's off-site practitioner, who made no effort to determine what those medications were, yet decided that Ms. Boyer could do without them until Monday. *Id.* ¶¶ 45–46.

Around 3:00 p.m. on Sunday December 22, Ms. Boyer developed shortness of breath and extremely high blood pressure. *Id.* ¶¶ 2, 47. The jail did not provide nurses on Sundays, so staff again called Ms. Pisney, who told them to dose Ms. Boyer with clonidine. *Id.* ¶¶ 47–59. The complaint also alleges that Ms. Fennigkoh, an ACH nurse, was at the jail over the course of the afternoon and was aware of Ms. Boyer's condition, but made no effort to send her to the hospital or secure her medications, *see id.* ¶¶ 50–51. A few hours later, around 8:00 p.m., Ms. Boyer alerted jail staff that she had constant, stabbing chest pain and pain in her left shoulder, that she was short of breath, and that she was nauseous and dizzy—all signs of a potential heart attack. *Id.* ¶¶ 52–55. Ms. Boyer reiterated that she had congestive heart failure and high blood pressure, and she identified multiple, specific medications for those conditions that she was prescribed but was not receiving. *Id.* ¶ 53. Staff again contacted Ms. Pisney, who could have directed them to send Ms. Boyer to the emergency room across the street from the jail, but instead told staff to give her aspirin. *Id.* ¶ 57–59. Ms. Boyer suffered a fatal heart attack a few hours later. *Id.* ¶ 61.

Besides alleging various individuals provided Ms. Boyer with inadequate medical care, the complaint further alleges that the inadequate care, in particular the failure to obtain Ms. Boyer's prescribed medications and send her to the ER, was the result of policies and practices that "prioritize low costs for jailers, and profits for ACH, at the expense of the health and lives of people who are detained in jails serviced by ACH, including Monroe County." ECF 1 ¶ 120.

The complaint then details the factual basis for that charge. It explains that ACH (and in turn, USA Medical), which is a national vendor of jail medical care services, has a business model focused on volume: it underbids competing providers by promising jailors that it will keep their healthcare costs down, and it accomplishes the low costs it promises by implementing severe cost control measures at the jails it services. *Id.* ¶ 121. The complaint notes that ACH's CEO has described this business model to its jailer-customers explicitly, explaining that reducing detainee visits to hospitals keeps ACH's jailor-customers "happy," which helps ACH expand its business, which has helped ACH increase its profits. *Id.* ¶ 122. The complaint alleges that ACH can operate in this manner because jury verdicts for medical misconduct in jails and prisons are typically a fraction of the verdicts for comparable misconduct in the free world, meaning that ACH can minimize care—particularly by minimizing trips to outside medical providers—and yet continue to operate in the same cost-cutting manner. *See id.* ¶¶ 122–25.

The complaint alleges that ACH offers insurance coverage to indemnify jailor-customers, with a result that jailors are willing to hire ACH despite its poor track record in providing appropriate medical care. *Id.* ¶ 124. Because they are indemnified by ACH's insurance, the complaint alleges, jailors like Monroe County can afford to be indifferent to ACH's practice of providing poor medical care—particularly its practice of keeping the jailer-customer's costs down by minimizing referrals to outside medical providers. *Id.* ¶¶ 121–22, 124.

The complaint also explains *how* ACH implements its cost-control measures on the ground as well. It alleges that ACH orients its employees to discount medical concerns raised by detained persons as complaints flowing from a desire to be "comfortable," even if the same complaint by a person in the outside world would call for medical attention. *Id.* ¶¶ 127–28. ACH also pressures practitioners in the field to reduce care, medications, or testing that require payments to outside medical providers. *Id.* ¶ 129. The complaint provides an example of such pressure at the Monroe County jail itself: ACH nurse Fennigkoh, with the approval of the jail's administrator, Capt. Hendrickson, emailed ACH practitioner Lisa Pisney's supervisor to pressure her to make fewer hospital referrals—including for chest pain—to reduce costs below the level of care deemed necessary in the free world, and otherwise sought to have jail staff pressure Ms. Pisney to order fewer safety measures—such as reducing the frequency of blood pressure monitoring—in order to keep down the jail's expenses in providing medical care. *Id.* ¶¶ 130–31. "*In this way*," the complaint alleges, defendants "conspired to provide inadequate medical care to detainees at the Monroe County Jail, including Ms. Boyer." *Id*. ¶ 132 (emphasis added).

The complaint further alleges that while ACH pressures its staff to cut back on care, it turns a blind eye to negative and even catastrophic medical outcomes that predictably result from such practices. *Id.* ¶ 133–37, 140. Even though the leading standard-setting body in the correctional healthcare industry recommends that mortality reviews should be performed after adverse events to identify potential deficiencies in care, ACH does not conduct mortality reviews following a death or a catastrophic event—except to assess its exposure to litigation. *See id.* ¶¶ 137–40. Indeed, the complaint alleges, during the relevant period ACH made no effort to track deaths at its facilities at all. *Id.* ¶ 137.

7

As a result of these policies, Plaintiff alleges, ACH employees or agents prioritize cost-reduction at the expense of providing adequate healthcare, including by discounting reports by patients of objectively serious medical needs and by failing or refusing to arrange for detained people to be treated at outside facilities, even when such treatment is medically indicated. *Id.* ¶ 149. ACH and Monroe County facilitated this cost-saving scheme through an explicit policy that prohibited jail staff from sending detainees to the emergency room, instead requiring them to go through ACH medical staff—the medical staff whom ACH has oriented and pressured to reduce off-site medical referrals to save money. *See id.* ¶¶ 130–31, 150, 154–57. The complaint alleges that these policies and practices were the moving force behind and proximate cause of Ms. Boyer's injuries. *Id.* ¶¶ 150, 153, 160.

The complaint further alleges that these same policies and practices have resulted in numerous other instances of inadequate medical care, in which an outside referral was indicated but not provided, *id.* ¶ 146, both nationally at facilities that ACH and USA Medical service, *see id.* ¶ 63, and at the Monroe County jail itself, *see id.* ¶ 100. It points to 20 such incidents at other facilities, *id.* ¶¶ 64–99, and 19 such incidents at Monroe County, *id.* ¶¶ 101–19.

**LEGAL STANDARD**

In considering a motion to dismiss, the courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007), a complaint need to pass only "two easy-to-clear hurdles" to survive a defendants' motion to dismiss: (1) it "must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to

relief, raising that possibility above a 'speculative level.'" *Id*. at 1084 (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"Plausibility" does not mean that the court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Rather, a complaint merely needs to "give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404. Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 558).

In turn, Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A "complaint [may] not contain all of the facts that will be necessary to prevail, but a filing under Rule 8 is not supposed to do that; it should be 'short and plain' and suffices if it notifies the defendant of the principal events . . . ." *Patterson v. World Wrestling Ent., Inc.*, No. 03-cv-0374, 2005 WL 8162784, at *4 (E.D. Wis. Feb. 8, 2005) (citing *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)).

Under *Twombly* and *Iqbal*, notice pleading is still the standard under the Federal Rules. The Seventh Circuit has interpreted those decisions "to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading," which is "something that anyone could do, regardless of what may be prompting the lawsuit . . . ." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). This does not mean that the Supreme Court repudiated the general notice-pleading regime of Rule 8 after *Twombly* and *Iqbal*; rather, those decisions instructed that Rule 8 "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* (quoting *Twombly*, 550

9

U.S. at 556). As such, "'[a]ny district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain [X]" should stop and think: What rule of law *requires* a complaint to contain that allegation?'" *Foremost Farms USA, Coop. v. Diamond V Mills, Inc.*, No. 16-CV-551-JDP, 2017 WL 1390699, at *4 (W.D. Wis. Apr. 18, 2017) (Peterson, J.) (quoting *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 923-24 (7th Cir. 2007). A "'decision declaring "this complaint is deficient because it does not allege X" is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b),'" *id.* (quoting *Vincent*, 485 F.3d at 923), because "[e]ven in the new world of pleading after *Twombly* and *Iqbal*, Rule 8 requires a plaintiff to give only adequate notice of the scope of, and basis for[,] the asserted claims. *Id.* (quotation omitted).

## ARGUMENT

I. **Plaintiff stated a Section 1983 claim against each of the Defendants.**

   A. **Plaintiff alleged sufficient facts to show that the Defendants were aware of and deliberately indifferent to Ms. Boyer's serious medical need.**

The Complaint describes the Defendants' awareness of Ms. Boyer's medical needs and involvement in her care. *See, e.g.*, ECF 1 ¶¶ 41–62, 125–32. The Complaint alleges that USA Medical, ACH, and Monroe County had cost-reducing policies that influenced Ms. Boyer's care, and the Defendants' employees Ms. Fennigkoh's and Capt. Hendrickson's specifically agreed to direct Ms. Pisney's nursing care to reduce medical care at and referrals from the jail in order to cut down on costs, rather than for medical reasons. *Id.* ¶¶ 130–31. Ms. Pisney's took their direction and requested aspirin for Ms. Boyer rather than necessary emergent care. *Id.* ¶ 59.

Defendants argue that the § 1983 claims must be dismissed because Plaintiff has alleged that only USA Medical/ACH employees Ms. Fennigkoh and Ms. Pisney were aware of Ms. Boyer's medical needs and failed to provide proper care. ECF 15 at 10. Plaintiff acknowledges

that Ms. Fennigkoh and Ms. Pisney were the Defendants who knew about Ms. Boyer's condition. Plaintiff's federal claims against the USA Medical defendants arise under supervisory and *Monell* theories of liability. Defendant takes issue with Plaintiff's reference to "Defendants" in paragraphs 142–46, and incorrectly states that Plaintiff alleges that Defendants are vicariously liable for Plaintiff's § 1983 claims. But Plaintiff has identified the acts or omissions for which each Defendant is liable, as well as each Defendant's individual role. The USA Medical defendants may be liable without any allegation that they knew about Ms. Boyer's medical condition.

Defendants' contrary argument amounts to a complaint that Plaintiff accuses multiple defendants of perpetrating the same identified dangerous policies and accuses multiple defendants of being deliberately indifferent to Ms. Boyer's serious medical needs and failing to prevent her death. Defendants cannot evade liability merely because of their collective misconduct and failures to act, nor is a complaint that accuses multiple defendants (and their alter-egos) of engaging in the same misconduct somehow impermissible. *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) (collective allegations of misconduct do "not render the complaint deficient" when "all defendants are responsible for the alleged conduct"); *S.Y. v. Holiday Hospitality*, No. 2:20-CV-624-JES-MRM, 2021 WL 1751363, at *2 (M.D. Fla. May 4, 2021).

The number of Defendants in this case is reflective of the depth of the deliberate indifference throughout USA Medical, ACH, and Monroe County Jail to the dangerous conditions there; the strength and pervasiveness of the policies and customs causing inadequate medical care; and the fact that many different individuals could have acted to prevent Ms. Boyer's death, but chose not to. Plaintiff specified which Defendants are responsible for which

11

acts or omissions. Defendants failed to cite any authority for its position or identify any further information they would need to respond to Plaintiff's complaint.  Plaintiff's complaint allows them sufficient notice to either admit or deny in answers that they perpetrated the alleged policies and customs or engaged in the alleged acts and omissions. *See, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1236 (N.D. Ala. 2019) ("With 44 separate defendants, the court cannot possibly expect Roche to individually list each defendant every time it refers to the defendants in the complaint. Such an expectation would create an unwieldly and cumbersome complaint.").

      **B.**      **Plaintiff has alleged facts permitting an inference of the existence of USA Medical's policy or practice that resulted in Ms. Boyer's death.**

The Complaint identifies numerous incidents of inadequate care at Monroe County Jail and other facilities serviced by ACH (and in turn, USA Medical).  ECF 1 ¶¶ 63–119.  And it alleges that in many of these incidents, Defendants were notified of the inadequate care before Ms. Boyer's death.  *Id.*[2]  In addition, the Complaint alleges that ACH exercises control over how USA Medical employees perform their medical duties.  *Id.* ¶ 28.  The Complaint alleges the multiple ways that ACH and USA Medical are linked. *Id.* ¶¶ 27–38.

Courts have repeatedly held that the national practices of private healthcare vendors like ACH—and in turn, USA Medical—are probative of the vendor's widespread practices under *Monell*.  *See, e.g.*, *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 744 (6th Cir. 2015) (noting with respect to a *Monell* plaintiff's "argument that a pattern of tortious or unconstitutional conduct . . .

---

[2]  A widespread practice of improper conduct permits the *inference* that the corporate entities must have been on notice of it.  *Williams v. City of Chicago*, No. 94-cv-3350, 1994 WL 594674, at *2 (N.D. Ill. Oct. 29, 1994) ("A municipal custom may be proved by establishing that policymaking officials knew of the practice and acquiesced in it or by establishing the longstanding or widespread nature of the practice which supports the inference that policymaking officials must have known about it.").

existed, evidence about similar incidents of inmate deaths in jail facilities served by [private healthcare vendor] SHP may be relevant to whether SHP acted with deliberate indifference"); *Herr v. Armor Corr. Health Servs.*, Inc., No. 6:19-cv-394, 2019 WL 12021672, at *5 (M.D. Fla. Sept. 9, 2019) (holding that alleged incidents of inadequate care by private jail healthcare vendor "around the country" supported a claim that the vendor "has a policy or custom of repeated delayed or denied medical care that directly resulted in the constitutional violation and Mr. Herr's death.").

In *Shields v. Prince George's County*, a *Monell* plaintiff suing healthcare vendor Corizon made "allegations related to previous lawsuits and complaints regarding Corizon employees in 14 different states." No. 15-cv-1736, 2016 WL 4581327, at *8 (D. Md. Sept. 1, 2016). Corizon claimed such incidents were irrelevant as "none of these allegations relate to the facility or even the state at issue in this case," *id.* at *9, but the *Shields* court rejected that argument. The court reasoned, "Corizon is a company that provides healthcare services to state and county correctional facilities and jails nationwide. Thus, its activities in a variety of states can be, and in this case are, relevant to the issue of custom and policy here." *Id.* (quotations omitted).

ACH is a national healthcare vendor like Armor and Corizon, *see* ECF 1 ¶ 121, making its practices in other jurisdictions relevant to Plaintiff's *Monell* claims against its alter-ego USA Medical in this case. And indeed, Plaintiff has alleged that ACH's inadequate provision of medical care—both nationally and at the Monroe County jail—are the result of practices instituted by ACH to reduce the provision of outside medical care at facilities it services across the country. *Id.* ¶¶ 63–121. Plaintiff's "national" allegations against ACH are relevant to its *Monell* claim against the USA Medical defendants. Contrary to Defendants' argument, other complaints may form the basis of a widespread practice claim—particularly where, as Plaintiff

13

has alleged here, they were met with indifference by the municipal defendant. *See, e.g.*, *Hoskin v. City of Milwaukee*, 994 F. Supp. 2d 972, 981–82 (E.D. Wis. 2014) (allegations that city had "received numerous complaints of illegal searches prior to the incident in question" supported a *Monell* claim, since "[h]aving received those complaints, the City necessarily had knowledge or notice that aggressive searches were occurring and was deliberately indifferent" in not changing its policies and practices).  In each of the cases in which Plaintiff alleges that a complaint was filed against ACH, Plaintiff also alleges that "ACH supervisors took no steps to determine whether the care provided to [the person] was the result of deficiencies in ACH's practices or processes regarding the delivery of medical care."  *See, e.g.*, ECF 1 ¶ 65.  These allegations are relevant for proving widespread practice claims.

Defendants also inaccurately argue that "inference of the existence of an unconstitutional corporate practice from the fact that ACH has settled lawsuits regarding inmate care would require impermissible speculation." ECF 15 at 13.  But the Complaint alleges that ACH itself has stated it only settles suits after determining that its employees provided inadequate medical care, ECF 1 ¶ 65, eliminating the need for "impermissible speculation."  The complaints and settlements support Plaintiff's *Monell* claims against the Defendants.

          C.         **Plaintiff has pleaded a claim for medical malpractice.**

The complaint charges each of the Defendants with medical malpractice.  ECF 1 ¶¶ 162–65.  Plaintiff's allegations of medical malpractice refer to the previous paragraphs, ECF 1 ¶ 162, in which the Complaint describes USA Medical employees' awareness of Ms. Boyer's medical needs and involvement in her care.  *See, e.g.*, ECF ¶¶ 41–62, 125–32.  As alleged, Ms. Pisney requested aspirin for Ms. Boyer rather than refer her to the emergency room.  *Id.* ¶ 59.  The Complaint alleges that USA Medical, ACH, and Monroe County had cost-reducing policies that influenced Ms. Boyer's care, and the Defendants' employees Ms. Fennigkoh's and Capt.

Hendrickson's specifically agreed to direct Ms. Pisney's nursing care to cut down on costs. *Id.* ¶¶ 130–31. Plaintiff has stated supervisory and respondeat superior liability claims for medical malpractice.

Defendants argue that the Court must dismiss the medical malpractice claim premised upon respondeat superior because the Complaint "fails to cite any facts that could establish that any Defendant . . . could have directed or controlled Nurse Practitioner Pisney and/or Nurse Fennigkoh in the exercise of their nursing judgment and care of Ms. Boyer." ECF 15 at 17. This argument amounts to a proposition that there is no respondeat superior liability in medical care. No cases cited support that conclusion because that is not what respondeat superior requires.

"Liability premised on the theory of respondeat superior does not require plaintiff to prove the employer had actual control over its employee's discretionary judgment as long as the employee's conduct is within the scope and course of employment." *Brickner v. Normandy Osteopathic Hosp.*, Inc., 746 S.W.2d 108, 115 (Mo. Ct. App. 1988). The requirements of respondeat superior are met here: USA Medical "had supervisory control over" Ms. Pisney and Ms. Fennigkoh's performance and "reaped the benefit of [their] labor." *Id.* USA Medical "could at any time dismiss [them] for poor exercise of [their] medical judgment." *See id.* Plaintiff has stated a claim for medical malpractice.

### D. Plaintiff has pleaded claims for survival, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Defendants make a cursory argument that because Plaintiff's federal claims fail, his state law claims also fail. As stated above, Plaintiff has sufficiently stated a federal claim, so the Court must reject Defendants' argument. Defendants have waived any other argument as to Plaintiff's state law claims, and in any event, Plaintiff has stated claims for survival, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress.

    **E.    Plaintiff filed his Complaint to protect its claim against USA Medical, and not as an attempt to avoid the scheduling order in *Boyer v. ACH*.**

As detailed above, Plaintiff was diligent in identifying USA Medical and related persons as defendants. Defendants' argument that this case is not judicially economical is not a basis for dismissal under Rule 12(b)(6), and defendants cite none. Rather, the argument highlights the appropriateness of consolidation. If consolidated, the additional claims against the USA Medical defendants will require no discovery into the merits, only limited discovery into the relationship between USA Medical and ACH. The Court should deny Defendants' request to dismiss the Complaint in the interest of judicial economy.

## CONCLUSION

For the above reasons the Court should deny the Defendants' Motion to Dismiss in its entirety.

Dated: April 22, 2023

Respectfully submitted,

By: s/*Maria Makar*

Steven Art
Stephen Weil
Maria Makar
Loevy & Loevy
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
makar@loevy.com