IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

GREGORY BOYER

   *Plaintiff,*

   *v.*

ADVANCED CORRECTIONAL HEALTHCARE, INC. ET AL,

   Case No: 3:20-cv-01123

   *Defendants.*

**MOTION TO INTERVENE AND MOTION TO MODIFY PROTECTIVE ORDER**

Pursuant to Federal Rules of Civil Procedure 24 and 16, movant The Estate of Demetrius Stephenson (Movant) respectfully moves this Court for an order 1) granting them leave to intervene in this case and 2) for modification of protective orders entered in this matter to permit Plaintiff's law firm to respond to a subpoena that Movant issued to them. In support of their motion Movant states:

### BACKGROUND

**A. The Stephenson case and its *Monell* claim against ACH**

Movant is the plaintiff in *The Estate of Demetrius Stephenson v. Calumet County, et al.*, No. 1:22-cv-956 (E.D. WI), a case pending in the Eastern District of Wisconsin. The case is brought under 42 U.S.C. § 1983 by the Estate of Demetrius Stephenson, a teenager who tragically committed suicide while in the custody of Calumet County jail. **Ex. 1** (*Stephenson* Complaint) ¶4. The Complaint in that matter contends that although Mr. Stephenson's jailers and ACH staff were aware he was suffering from acute mental

1

distress and suicidal ideations, he was denied his medication and mental health treatment and that deliberate indifference directly resulted in his death. *Id.* ¶¶ 150-163.

Relevant to this motion to intervene, one of the claims brought by the Stephenson Estate is a *Monell* claim against Advanced Correctional Healthcare (ACH), a private for-profit corporation that was contracted by Calumet County to provide healthcare to inmates at the Calumet County jail. *Id.* ¶¶ 168-173. Stephenson's Estate contends that, in an effort to maximize profits and "maintain[] a competitive edge as a low-cost vendor," ACH intentionally provided inadequate treatment not only to Stephenson, but to all of the incarcerated patients in their care nationwide. *Id.* ¶¶ 109-130. The Estate intends to prove that ACH had a nationwide policy designed to cut costs by denying needed medications and healthcare, ignoring inmate requests for medical and mental health treatment, understaffing jail facilities, refusing to send inmates for treatment outside of the jail facilities, and failing to adequately train its employees and the correctional guards they worked alongside. *Id.* The *Monell* claim contends that Stephenson's death was caused by these widespread practices that are permitted and encouraged by ACH's and that ACH is aware that these widespread practices result in life-threatening conditions and death of inmates but that ACH maintains these widespread practices because it is so profitable for them to do so. *Id.* ¶¶ 168-173.

**B. The *Monell* claim brought by Plaintiff in this case**

These allegations should sound familiar, as they are essentially the same allegations that the Plaintiff in this case has brought against ACH in his own *Monell* claim. ACH moved to dismiss the *Monell* claim here, but this Court denied that request, in part

because Boyer alleged "enough details about the medical treatment of his wife, other detainees at the same jail, and the treatment of ACH's care across the country to present a story that holds together regarding defendants' potential liability for his wife's death." ECF No. 134 at 15 (citing *Swanson v. Citibank, N.A.*, 614 F. 3d 400, 404 (7th Cir. 2010)).

### C. This Court allowed discovery into other lawsuits against ACH

After allowing Boyer's *Monell* claim against ACH to go forward, this Court moved on to resolving ACH's objections to Boyer's discovery requests for the "case documents" in "25 lawsuits in which the plaintiffs alleged that ACH provided inadequate medical care similar to that" at issue in *Boyer. Id.* at 19-20. To do so Boyer "issued subpoenas seeking case files from 12 non-party law firms that represented ACH in 8 states" and ACH responded by moving to quash. *Id.* at 20.

This Court found that the subpoenas sought permissible discovery and ultimately denied the request to quash, concluding that "the case documents from those previous lawsuits may well include information relevant to inadequate medical care similar to that" at issue in this matter. *Id.* at 21. It also required ACH to produce "settlement documents" from those cases because "their existence is likely to provide relevant but otherwise hard to obtain information about ACH's knowledge of allegedly unconstitutional care in the facilities it serves, the actions it did or did not take in response, and the amount of punitive damages that may be necessary to induce policy changes." *Id* at 23.

### D. Stephenson's Estate issued a subpoena to Boyer's law firm seeking the case documents produced in discovery in the Boyer case

3

Given the similarity of the *Monell* claims at issue in the *Stephenson* case and in the *Boyer* case, Stephenson's Estate believes the documents gathered by Boyer would be similarly relevant in that case. In the same way that Boyer did here, Stephenson's Estate issued a subpoena to Boyer's law firm asking them to produce the ACH case related documents they gathered. **Ex. 2** (Subpoena issued to Loevy & Loevy law firm). Boyer's law firm has expressed their intent to comply with that subpoena as long as the relevant *Boyer* protective order is modified and the *Stephenson* protective order includes the required HIPAA protections. A HIPAA-qualified protective order already exists in the *Stephenson* case. **Ex. 3** (*Stephenson* HIPAA Protective Order). A proposed order to modify the Protective Orders in the *Boyer* case (Dkt. Nos. 40-1, 41, and 129) is attached as Exhibit 4. **Ex. 4.** (Proposed Order Modifying Protective Order).

And so, Movant now brings this present motion to intervene to seek two items of relief: 1) leave from this Court to intervene in this case pursuant to Rule 24(b)(1)(b) and 2) an order permitting Boyer's law firm to respond to the subpoena, either by modification of the Court's protective order or by way of other relief this Court may deem appropriate.

## ARGUMENT

Federal Rule of Civil Procedure 24(b)(1)(B) "allows for permissive intervention by anyone who has a claim or defense that shares with the main action a common question of law or fact." *Lippert v. Ghosh*, 2023 WL 3267977 at * 3 (N.D. Ill. May 4, 2023). This includes a request to modify a protective order when a third party is seeking "access to information generated through judicial proceedings." *Id.* This is universally accepted:

4

"every court of appeals to have considered this matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders." *Id.* This is exactly what Movant is seeking to do here: to be allowed to intervene and seek a modification of the HIPAA-qualified protective order so that Boyer's law firm can respond to Movant's subpoena.

Turning to the actual meat of the issue, whether the protective order should be modified, the Seventh Circuit has established a four-factor test "for resolving motions to modify protective orders…1) the nature of the protective order; 2) the foreseeability, at the time of issuance of the order, of the modification requested; 3) the parties reliance on the order; and most significantly 4) whether good cause exists for the modification." *Id.* at * 4 (quoting *Heraeus Kulzer, GmBH v. Biomet, Inc.*, 881 F. 3d 550, 565 (7th Cir. 2018)).

The Court in *Lippert* was confronted with a nearly identical request to the one brought by this motion. The movant in *Lippert* sought to modify the HIPAA protective order entered in that case so that Lippert's law firm could respond to a subpoena issued to them by a third-party seeking "documents to support [a] *Monell* claim in his case." *Id.* (quoting *Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733 at * 8 (N.D. Ill. Nov. 10, 2021)). The movant in *Lippert* was pursuing a *Monell* claim against a correctional healthcare provider and was seeking documents to support that claim based on a "widespread practice theory of liability." *Id.* at 6.

After considering the four factors, the *Lippert* Court granted the modification. It pointed out that allowing the subpoena would allow the Movant to pursue their *Monell* claim while still providing significant confidentiality due to "the third-party HIPAA

5

qualified protective order obtained in his own case." *Id.* While the modification was granted, the *Lippert* Court paused to mention that modifying its own protective order did not mean the documents sought by the Movant in their subpoena would actually be produced. *Id.* at 5.

Just like in *Lippert,* Movant seeks a modification of the protective order here to support a wide-spread practices *Monell* claim against ACH in their own case. Just like in *Lippert* there has been a HIPAA qualified protective order issued in Movant's case and so the "minor modification Movant seeks to the protective order in this case" poses no risk that there will be "improper disclosure of…sensitive information." *Id.* at 6. Any other concerns into "whether any medical documents or other documents will ever be produced is (as it should be) left to the court in which [Movant's case] is pending." *Id.* This Court should rule similarly.

Counsel for Moveant has emailed counsel for all parties in the *Boyer* case informing them of Moveant's intention to file this motion. Counsel for Boyer has stated that he does not oppose producing the documents responsive to the subpoena issued to the Loevy & Loevy law firm as long as the relevant *Boyer* protective order is modified and the *Stephenson* protective order includes the required HIPAA protections.

## CONCLUSION

Based on the foregoing, Movant requests:

1) to be granted leave to intervene in this matter pursuant to Rule 24(1)(B) for the limited purpose of seeking modification of the protective order in this case, and

2) for an order modifying the existing protective order or otherwise permitting Plaintiff's law firm to produce documents in response to Movant's subpoena for use by the litigants in the *Stephenson* case, to be governed by the HIPAA protective order in the *Stephenson* case.

Respectfully submitted,

Dated: November 30, 2023

/s/ John H. Bradley
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
STRANG BRADLEY, LLC
613 Williamson Street, Suite 204
Madison, Wisconsin 53703
[608] 535-1550
John@StrangBradley.com
Rick@StrangBradley.com

Attorneys for Plaintiff