## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**GREGORY BOYER**, as Administrator of the
Estate of Christine Boyer, and on his own behalf,

       Plaintiff,

v.                                 Lead Case No. 20-CV-1123

**ADVANCED CORRECTIONAL
HEALTHCARE, INC.**, *et al.*,

       Defendants.

---

**GREGORY BOYER**, as Administrator of the
Estate of Christine Boyer, and on his own behalf,

       Plaintiff,

v.                                 Case No. 22-CV-723

**USA MEDICAL & PSYCHOLOGICAL
STAFFING, S.C.**, *et al.*,

       Defendants.

---

### DEFENDANTS' BRIEF IN OPPOSITION TO
### PLAINTIFF'S MOTIONS *IN LIMINE*

Defendants Advanced Correctional Healthcare, Inc., USA Medical & Psychological Staffing, S.C., Lisa Pisney, and Amber Fennigkoh submit the following arguments in opposition of plaintiff's motions *in limine*. (Dkt. 320.)

### PLAINTIFF'S MOTION *IN LIMINE* NO. 1
**(Bar any reference to the events leading to Christine Boyer's arrest, including any reference to allegations of domestic abuse or unlawful use of a firearm, and to the charges Ms. Boyer was facing)**

**RESPONSE:** The defendants **oppose** this motion. Fed. R. Evid. 401 permits the

introduction of evidence that has any tendency to make a fact of consequence more or less probable than it would without the evidence. Fed. R. Evid.. 401. Here, plaintiff seeks to bar introduction of highly relevant evidence related to plaintiff's wrongful death claim. (Dkt 320 at 1-2). Specifically, plaintiff seeks to "bar any reference to allegations of domestic abuse or unlawful use of a firearm, and to the charges Ms. Boyer was facing." This evidence goes directly to the quality of plaintiff's relationship with the decedent and is relevant to plaintiff's claims. *See* WIS JI Civ 1870, *infra*.

To be clear, defendants have no intention of discussing the specific charges Ms. Boyer faced, but they do intend to introduce evidence of the situation giving rise to those charges. What plaintiff really seeks to exclude is reference to the underlying factual situation wherein Ms. Boyer forcibly inserted a loaded handgun into her husband's mouth while pulling his hair back. (*See e.g.*, Dkt. 314, ¶¶ 513-14) (defendants disclosing as trial exhibit phone call and transcript of phone call from Ms. Boyer to Gregory Boyer at 2343 on December 21, 2019). The circumstance, while unfortunate, is probative of the stability and quality of the marital relationship, which the jury will to some extent be valuing. *See Estate of DiPiazza v. City of Madison*, 2017 U.S. Dist. LEXIS 68821, at *7 (*Citing Awalt v. Marketti,* 287 F.R.D. 409, 423-24, ordering the disclosure of "medical records of Mrs. Awalt's treatment for domestic abuse by Mr. Awalt, because they were relevant to the plaintiff's claim for damages for loss of consortium.") If treatment records of alleged domestic abuse are relevant in considering a loss of society claim, certainly evidence of the underlying situation giving rise to the alleged domestic abuse is relevant.

Defendants have no intention of airing exhaustive details of Mr. and Ms. Boyer's unfortunate dispute. But they should be permitted to introduce the events leading to Ms. Boyer's arrest as probative of a topic at issue in the case: Mr. Boyer's loss of companionship. A relationship that involves domestic violence and threats involving guns are viewed differently than

relationships that are free of such events. If Mr. Boyer does not testify to those events the defendants should be permitted to introduce the evidence.

Most evidence is prejudicial to one party or another. The standard is not whether the evidence is prejudicial, but whether the prejudicial effect is substantially outweighed by the probative value. Fed. R. Evid. 403. This evidence of the couple's relationship is substantially more probative than prejudicial. As in *Awalt*, defendants seek to introduce this evidence to "paint a picture of the [Boyer's] relationship that undermines [Mr. Boyer's] claim of damages for loss of consortium." *Awalt*, at 422. If plaintiff does not wish defendants to introduce evidence of the quality of the relationship he had with Ms. Boyer, then he should dismiss his wrongful death claims and forgo recovery on loss of society and companionship.

This Court should deny plaintiff's motion in limine.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 2**
**(Bar any reference to Plaintiff and Ms. Boyer's marital problems or infidelity, or any suggestion that they were getting divorced)**

**RESPONSE:** The defendants **oppose** this motion. Plaintiff insists that his claim is only about "Defendants' failure to provide medical care at the Jail while Ms. Boyer was in custody" and that "the nature of the marital relationship between plaintiff and Ms. Boyer" is irrelevant pursuant to Fed. R. Evid. 401, 402, and 403. But plaintiff appears to forget that he has also brought a claim for wrongful death in which he seeks damages "including but not limited to the loss off [sic] society and companionship with Ms. Boyer." (Dkt. 161 ¶ 184.)

> Society and companionship includes the love, affection, care, and protection [Mr. Boyer] would have received from [Ms. Boyer] had she continued to live. In determining [Mr. Boyer's] loss of society and companionship, you should consider . . . the past relationship between the spouses; the love, affection, and conduct of each toward the other . . .; and the personality, disposition, and character of [Ms. Boyer].

Wis. JI-Civil 1870 Death of Spouse: Surviving Spouse's Loss of Society and

3

Companionship.

The relevant jury instruction directs that the jury should consider "the past relationship," including the "conduct of each [spouse] toward the other." Wis. JI-Civil 1870. Plaintiff himself has made relevant his past relationship with Ms. Boyer, including any marital problems, infidelity, divorce proceedings, or any other evidence of the Boyer's relationship. It is for the jury to decide whether Ms. Boyer had acted "very much out of character for her." In addition to the events leading up to Ms. Boyer's arrest, evidence of marital problems, infidelity, divorce proceedings, or general suggestions that their marriage was unstable would be some of the most probative evidence the jury will receive on plaintiff's wrongful death claim.

It is, at best, disingenuous to claim that these things have no bearing on the matters at issue or that the probative value is of marginal significance. Unless Mr. Boyer voluntarily dismisses a claim for damages for loss of society and companionship, this Court should deny his motion in limine.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 3
### (Bar any reference to Ms. Boyer's history of compliance or non-compliance with medical treatment)

**RESPONSE:** The defendants **oppose** this motion. Plaintiff submits the evidence should be barred under Fed. R. Evid. 404(b). That Rule provides that "evidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Defendants do not intend to introduce evidence of Ms. Boyer's compliance or non-compliance with medical treatment to attempt to establish that Ms. Boyer had "a character of non-compliance" with her medications and that, because she has this character, on this occasion she acted in conformity with that character. Rather, defendants will

introduce evidence that Ms. Boyer was educated by her physician and aware of her need for potassium supplements daily, yet she declined to take the supplements and declined to inform the jail and nursing staff at the Jail that she was prescribed those medications. The evidence is relevant to plaintiff's arguments that defendants failed to conduct an adequate intake screening or post-intake interview to discover Ms. Boyer's medical needs and plaintiff's arguments that defendants "refused" to provide Ms. Boyer "her medications." In fact, the defendants had no means of ascertaining that Ms. Boyer needed potassium supplements. Their awareness of her medical needs is a critical element for both the constitutional and state law negligence claims. *See, e.g., Pittman v. Madison Cnty.,* 108 F.4th 561, 572 (7th Cir. 2024)(plaintiff must show officer "did not take reasonable available measures to abate the risk of serious harm to [the plaintiff], even though *reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious."* (Emphasis in original).

The jury should know that Ms. Boyer was prescribed potassium supplements but did not feel they were important enough for her to be compliant with her physician's recommendations. This bears on the likelihood that further interviews with Ms. Boyer, or more thorough interviews, would have yielded a mention of her potassium deficiency. If Ms. Boyer did not accept her doctor's advice that the medications were necessary, a jury may believe she was not likely to have mentioned the supplements to jail staff.

Plaintiff's argument that defendants should have tracked down her medication list from her pharmacy reaches a dead end if Ms. Boyer was not likely to have taken the supplements anyway. Similarly, Mr. Boyer testified that he did not locate any potassium pills in his home. The jury should know that Ms. Boyer never mentioned potassium pills in her jail telephone conversations and did not ask her husband to bring them.

The evidence of Ms. Boyer's knowledge of her need for the supplements and her non-compliance bears on the reasonableness of defendants' conduct. Jail medical staff should not be blamed for failing to discover information Ms. Boyer was fully aware of yet failed to share. A jury may believe defendants interview techniques were reasonable and should have elicited Ms. Boyer's critical medical needs. The fact that Ms. Boyer failed to mention her need for potassium supplements (which she did not take) is not the fault of the staff. This disparity in knowledge of her chronic potassium deficiency is directly relevant to the questions of defendants' liability ("reasonableness") as well as Mr. and Ms. Boyer's contributory negligence.

This information is highly relevant under a Fed. R. Evid. 401 analysis and the probative value is not substantially outweighed by any prejudicial effect and will not be used for as improper character evidence.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 4**
**(Bar any reference to Plaintiff's remarriage following Ms. Boyer's death)**

**RESPONSE:** The defendants **oppose** this motion. Plaintiff concedes that evidence of remarriage is relevant to the issue of damages, specifically loss of society and companionship. Plaintiff further concedes that "Wisconsin is one of the only jurisdictions to allow jurors to consider remarriage when assessing loss of society damages." (Dkt. 320 at 5.) Indeed, the Wisconsin Court of Appeals cited *Jensen v. Heritage Mut. Ins. Co.*, 23 Wis. 2d 344, 355, 127 N.W.2d 228 (1964), for the proposition that "[plaintiff's] remarriage after the accident was a proper factor for the jury to consider in determining his pecuniary damages in the wrongful death action." *Abernathy v. Eilertsoni,* 1985 Wisc. App. LEXIS 3484 (unpublished opinion).

Plaintiff suggests that introduction of such evidence would be unfairly prejudicial. (Dkt. 320, at 5.) Plaintiff is mistaken. Wisconsin courts hold that evidence of remarriage is relevant and admissible. *Jensen.* Specifically, the Wisconsin Supreme Court held "The possibility of marriage

6

or remarriage is <u>always an element</u> which it is proper for the jury to consider in determining damages in a wrongful-death action. This being so, it necessarily follows that where the possibility has become an actuality by the time of trial (as here) the jury should be permitted to consider such fact in assessing damages." *Id.* (internal citations omitted). In other words, Wisconsin law permits evidence of remarriage for the exact purpose plaintiff seeks to exclude it.

Plaintiff's motion should be denied.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 5
### (Bar argument, testimony, or suggestion of Defendants' inability to pay a financial judgment)

**RESPONSE:** The defendants **oppose** this motion. Plaintiff seeks punitive damages against the individual defendants in this lawsuit. (Dkt. 333, at 8. Plaintiff's Proposed Jury Instruction 9.) Plaintiff's proposed jury instruction states "[i]n determining the amount of any punitive damages, you should consider the following factors . . . defendants' financial condition." *Id.* Having placed this issue squarely before the jury, plaintiff cannot credibly argue defendants should be barred from offering evidence of their financial condition.

However, this question is largely moot because the Court has instructed that this trial will be held in two phases, a liability phase and a damages phase. (Dkt. 31 at 6). Furthermore, unlike the *Lawson* case these individual defendants have not "pleaded severe financial strain." Defendants have no intention to introduce evidence that they are destitute, like did the defendants in *Lawson*, but the defendants must be able to testify to their respective individual financial situations in order for the jury to accurately assess whether punitive damages are appropriate. Defendants must be able to do this without concern that plaintiff will attempt to introduce evidence of collateral source payments.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 6
#### (Bar argument, testimony, or suggestion that Plaintiff's attorneys are from out of town)

**RESPONSE:** The defendants **do not oppose** this motion. However, plaintiff's counsel should not be permitted to mislead the jury on these facts.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 7
#### (Bar argument, testimony, or suggestion of Defendant's good character)

**RESPONSE:** The defendants **oppose** this motion. The motion is so vague it would preclude defendants from presenting their case. The jury is required to assess the witnesses' credibility. Defendants should be permitted to introduce evidence of their qualifications, awards and merits without fear of violating a court order. The motion unnecessarily circumscribes counsel's and the witnesses' choice of words. The Court will be present to rule on such issues; this motion is unnecessary and should be denied.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 8
#### (Bar any reference by any witness other than the causation experts to anything in Ms. Boyer's medical records, unknown medical history, or prior conditions not known at this time)

**RESPONSE:** The defendants **oppose** this motion in part. Defendants agree that no lay witness should be permitted to testify to "anything in Ms. Boyer's medical records, unknown medical history, or prior conditions not known at the time." (Dkt. 320, at 8). This includes plaintiff Mr. Gregory Boyer who testified during his deposition that Ms. Boyer was secretive with him about her medical conditions and that he was not very involved with her medical care. (*See e.g.* Dkt. 210, 90:1-93:23).

However, defendants are concerned that plaintiff's Motion in Limine No. 8 is worded too vaguely and ambiguously as to constrain qualified experts from discussing their personal

knowledge of Ms. Boyer's healthcare situation from their review of Ms. Boyer's records. Each of defendants' experts reviewed Ms. Boyer's medical records in detail. They discussed their knowledge of her health in their expert reports. They should not be limited in the manner they discuss Ms. Boyer's health, including relevant diagnoses and treatment outside the Jail.

An expert should be permitted to explain, for example, that Ms. Boyer had a childhood cancer and was treated with chemotherapy that likely contributed to her potassium deficiency. That information is available to the experts in retrospective review, as will be obvious from the testimony. If plaintiff wants to point out that the actors involved in Ms. Boyer's care did not know about the information found in her medical records (because Ms. Boyer did not tell them), then counsel is free to raise that point on cross-examination. The Court should not pre-emptively circumscribe the experts' ability to explain their duly-disclosed opinions.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 9
### (Bar Dr. Erdman as a witness other than as to his personal knowledge of relevant facts)

**RESPONSE:** The defendants **oppose** this motion in part. Dr. Erdman was Ms. Boyer's primary care physician. As plaintiff acknowledges, defendants disclosed Dr. Erdman under Rule 26(a)(2)(C) to testify concerning his management of Ms. Boyer's prescriptions, including his experience with her compliance. (Dkt. 320 at 9). He should not be prohibited from testifying within the scope of that disclosure. Witnesses disclosed under Rule 26(a)(2)(C) are permitted to testify to their opinions. *See* Rule 26(a)(2)(C)(ii)(noting the disclosure must state "a summary of the facts and opinions to which the witness is expected to testify")(underlining supplied).

Plaintiff's motion is overbroad and recklessly flails at limiting Dr. Erdman's contribution. Dr. Erdman testified that he observed Ms. Boyer to be "drug seeking" and "manipulative." Defendants do not intend to elicit those particular conclusions, but Dr. Erdman should not be prohibited from discussing his experience in his treatment of Ms. Boyer, including his concerns

about her compliance. Dr. Erdman should be able to testify to his observation that she was fully aware of her need for potassium supplements, was educated by him about the consequences of not taking the supplements, yet declined to take those supplements. Those facts are relevant and probative, as discussed above in response to Motion in Limine No. 3.

Defendants do not intend to elicit from Dr. Erdman an opinion about Ms. Boyer's cause of death.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 10**
**(Bar argument, testimony, or suggestion that Plaintiff is at fault for Ms. Boyer's death because he did not bring Ms. Boyer's medications to the Jail)**

**RESPONSE:** The defendants **oppose** this motion.  The motion is, once again, overbroad and seeks to limit the defendants' discussion of the known factual narrative.  Plaintiff vehemently blames Nurse Fennigkoh and Nurse Practitioner Pisney for not investigating and obtaining more information about Ms. Boyer's diagnoses and prescriptions. They should be able to discuss the narrative of events, which included (1) Ms. Fennigkoh's discussion with Ms. Boyer in which it was agreed she could contact her husband to obtain the information, and (2) Ms. Fennigkoh's discussion with Mr. Boyer in which he agreed he could bring her medical information and prescriptions to the Jail. The information goes to Fennigkoh's frame of mind and reasonableness and Mr. and Ms. Boyer's contribution to the unfortunate outcome.   Plaintiff cannot blame defendants for not obtaining the information while simultaneously prohibiting them from pointing out that they *twice* confirmed a plan to get the information from the best available source: Mr. Boyer.

Plaintiff's motion presumes defendants should not have relied on Mr. Boyer. Whether or not it was reasonable or valid for defendants to request Mr. Boyer bring in a copy of his wife's medication and problem list is a question to be decided by the jury, not in a motion in limine.

10

Secondly, in defendants' Answer to plaintiff's fourth amended complaint, defendants asserted several affirmative defenses for which evidence of Mr. Boyer's ability to gather Ms. Boyer's medications, medication list, or problem list is directly relevant. (Dkt. 160, ¶¶ 6, 7, 13 (factual and legal assertions)), *id*. ¶¶ 8, 9, 10, 11, 17 (affirmative defenses). Whether or not Mr. Boyer was able to gather the information requested of him by staff at the Monroe County Jail and the reasons he was or was not able to gather such information is directly relevant to these defenses. For example, if the jury finds that Mr. Boyer was unable to gather Ms. Boyer's medications list or problems list because Ms. Boyer was secretive about her medical conditions and withheld that information from Mr. Boyer, then the jury may find that Ms. Boyer was contributorily negligent or that she assumed the risk of harm through that conduct.

### PLAINTIFF'S MOTION *IN LIMINE* NO. 11
### (Bar argument or testimony comparing the legal standards the jury will be instructed on, and suggesting negligence is a lower bar than deliberate indifference)

**RESPONSE:** The defendants **oppose** this motion. Plaintiff's counsel would apparently like the jury to be misinformed about the standards they are applying. The supreme court has instructed that there is a distinction between negligence and a constitutional violation. Mere negligence is not sufficient to establish a constitutional violation. Counsel commonly discuss the jury instructions with the jury, including the precise language of the burden of proof instruction and the liability instructions. The Court should not pre-empt these discussions, particularly in a fashion that misstates the relative standards.

## PLAINTIFF'S MOTION *IN LIMINE* NO. 12
### (Bar reference to fact Ms. Boyer was carrying thousands of dollars in cash when arrested)

**RESPONSE:** The defendants **oppose** this motion. Defendants agree that the amount of cash Ms. Boyer carried has no relevance to the medical care Ms. Boyer received. However, defendants oppose this motion because the <u>reason</u> Ms. Boyer carried around such large amounts of cash may be relevant to Mr. Boyer's wrongful death claim. For example, Mr. Boyer testified that Ms. Boyer cashed her disability checks and carried that money with her while Mr. Boyer directly deposited his checks into a bank account and paid all of the couple's bills. A jury hearing that testimony may find it probative of the nature and quality of their relationship, as well as how they regarded one another.

The jury is given a broad range of factors it may consider:

Society and companionship includes the love, affection, care, and protection [Mr. Boyer] would have received from [Ms. Boyer] had she continued to live. In determining [Mr. Boyer's] loss of society and companionship, you should consider . . . the past relationship between the spouses; the love, affection, and conduct of each toward the other . . .; and the personality, disposition, and character of [Ms. Boyer].

Wis. JI-Civil 1870 Death of Spouse: Surviving Spouse's Loss of Society and Companionship.

The testimony relates to "the character of Ms. Boyer" as well as "the conduct of each toward the other." The Court may issue a limiting instruction to cure any risk of unfair prejudice. This motion should be denied.

## PLAINTIFF'S MOTION *IN LIMINE* NO. 13
### (Bar reference to Ms. Boyer's pattern of alcohol consumption and painkiller usage)

**RESPONSE:** The defendants **oppose** this motion.

While defendants do not intend to paint the picture that Ms. Boyer was an alcoholic, her alcohol consumption is relevant to this lawsuit. Specifically, Ms. Boyer's alcohol consumption on

the day she was incarcerated at Monroe County Jail had a direct impact on the amount of medical information she was able to convey to the staff.

Nor will defendants argue that Ms. Boyer was weaning off oxycodone. Plaintiff intends to argue that Ms. Boyer contacted Mr. Boyer and discussed medications in an effort to convince the jury that she was concerned about life saving medication. However, the phone calls to Mr. Boyer suggest that Ms. Boyer was more concerned with Mr. Boyer bringing in her pain medications, i.e., oxycodone. If plaintiff intends to suggest that Ms. Boyer requested that Mr. Boyer bring her medications to the jail, then defendants must be able to clarify to the jury <u>what</u> medications it was that Ms. Boyer sought. This is not unfairly prejudicial, nor will it confuse the jury about the issue.

To the extent plaintiff seeks to bar evidence, testimony, or argument regarding Ms. Boyer's "general history of alcohol consumption or regarding the efforts of Plaintiff and Ms. Boyer to wean her off oxycodone" his concern is misplaced. Defendants seek only to introduce evidence of Ms. Boyer's alcohol consumption precipitating her detention at Monroe County Jail and her apparent focus on obtaining oxycodone as opposed to spironolactone.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 14**
**(Bar reference to the fact Plaintiff and Ms. Boyer spoke on the phone while Ms. Boyer was in custody about Plaintiff calling a lawyer)**

**RESPONSE:** The defendants **do not oppose** this motion.

Dated this 22nd day of August, 2025.

**LEIB KNOTT GAYNOR LLC**

By: _/s/ Douglas S. Knott_
     Douglas S. Knott, SBN 1001600
     Daniel A. Kafka, SBN 1122144
     Attorneys for Defendants
     219 N. Milwaukee Street, Suite 710
     Milwaukee, WI 53202
     Telephone: (414) 276-2102
     Fax: (414) 276-2140
     Email: dknott@lkglaw.net
            dkafka@lkglaw.net