UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Gregory Boyer, as Administrator of the
Estate of Christine Boyer, and on his own
behalf,

             Plaintiff,

vs.

Advanced Correctional Healthcare, Inc.,
Lisa Pisney, Amber Fennigkoh, Stan
Hendrickson, Danielle Warren, Shasta
Parker, and Monroe County, Wisconsin

             Defendants.

20-cv-1123 jdp

---

Gregory Boyer, as Administrator of the
Estate of Christine Boyer, and on his own
behalf,

             Plaintiff,

vs.

USA Medical & Psychological Staffing,
S.C., Norman Johnson, Travis Schamber,
Wesley Harmston, and Jillian Bresnahan,

             Defendants.

3:22-cv-723 jdp

---

**DEFENDANTS USA MEDICAL & PSYCHOLOGICAL STAFFING, S.C.,
NORMAN JOHNSON, M.D., AND TRAVIS SCHAMBER, D.O.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT.**

Pursuant to Fed. R. Civ. P. 56., Defendants USA Medical & Psychological Staffing, S.C. ("USA Medical"), Norman Johnson, M.D. ("Dr. Johnson"), and Travis Schamber, D.O. ("Dr. Schamber"), submit this memorandum of law in support of their Motion for Partial Summary Judgment of: (1) the claims of Plaintiff Gregory Boyer ("Plaintiff") to pierce USA Medical's corporate veil to hold Dr. Johnson, Dr. Schamber, and Advanced Correctional Healthcare, Inc. ("ACH") liable as alleged alter-egos of USA Medical, (2) Plaintiff's 42 § 1983 and state-law claims against Drs. Johnson and Schamber, and (3) Plaintiff's claims to pierce the corporate veil of ACH to hold Dr. Johnson liable as an alleged alter-ego of ACH.[1]

USA Medical, Dr. Johnson, and Dr. Schamber further join Defendant ACH's motion for summary judgment of Plaintiff's Monell claims.

## **INTRODUCTION**

Plaintiff has failed to produce evidence that would establish the elements of a *prima facie* alter-ego liability claim to pierce USA Medical's corporate veil to hold Defendants Drs. Johnson and Schamber personally liable, or to hold ACH liable, for any claims against USA Medical.

Plaintiff has further failed to produce evidence of *prima facie* constitutional and state law malpractice, survival, wrongful death, and infliction of emotional distress claims against Drs. Johnson and Schamber that establishes either was aware of decedent Christine

---

[1] Plaintiff's claims against Wesley Harmston and Jillian Bresnahan have been dismissed by stipulation of the parties of *Boyer v. USA Medical, et al.* (3:22-cv-00723-jdp ECF No. 112)

Boyer, aware of her medical needs, provided objectively unreasonable care for such needs, or were in any way involved in her medical care.

Finally, Plaintiff has failed to produce evidence that would establish the elements of a *prima facie* alter-ego liability claim to pierce the corporate veil of ACH to hold Dr. Johnson personally liable for any claims against ACH in Plaintiff's companion action against ACH, *Boyer v. ACH, et. al.*, 3:20-cv-01123 ("*Boyer I*").

For these reasons, dismissal on summary judgment pursuant to Fed. R. Civ. P. 56 is warranted for: (1) Plaintiff's alter-ego claims to pierce the corporate veil of USA Medical veil to hold Dr. Johnson, Dr. Schamber, and ACH liable, (2) Plaintiff's 42 § 1983 and state-law claims against Drs. Johnson and Schamber, and (3) Plaintiff's claims to pierce ACH's corporate veil to hold Dr. Johnson liable.[2]

## ISSUES

I.     **WHETHER THERE IS ANY GENUINE ISSUE OF MATERIAL FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT AS A MATTER OF LAW OF PLAINTIFF'S CLAIMS TO PIERCE USA MEDICAL'S CORPORATE VEIL TO HOLD DR. JOHNSON, DR. SCHAMBER, AND/OR ACH LIABLE ON A THEORY OF ALTER-EGO LIABILITY.**

II.    **WHETHER THERE IS ANY GENUINE ISSUE OF MATERIAL FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT AS A MATTER OF LAW OF PLAINTIFF'S 42 U.S.C. §1983 AND STATE-LAW CLAIMS AGAINST DRS. JOHNSON AND SCHAMBER.**

---

[2] These Motions, if granted, would result in dismissal of all claims against Drs. Johnson and Schamber, and all claims against USA Medical except potential vicarious liability for the State Law Negligence claims against USA Medical's employed Nurses, Lisa Pisney and Amber Fennnigkoh, in Boyer I.

III.    **WHETHER THERE IS ANY GENUINE ISSUE OF MATERIAL FACT THAT WOULD PRECLUDE SUMMARY JUDGMENT AS A MATTER OF LAW OF PLAINTIFF'S CLAIMS TO PIERCE ACH'S CORPORATE VEIL TO HOLD DR. JOHNSON LIABLE ON A THEORY OF ALTER-EGO LIABILITY.**

## PROCEDURAL HISTORY

In this action, ("Boyer II"), Plaintiff has sued Defendants USA Medical & Psychological Staffing, S.C., ("USA Medical") and individual Defendants who were USA Medical's shareholders and/or officers as of the time relevant to Plaintiff's claims: Dr. Johnson and Dr. Schamber.

*Boyer II* arises from the same events and medical care as its companion action, *Boyer I*. In *Boyer II*, as in *Boyer I*, Plaintiff alleges that Christine Boyer died from cardiac arrest after Monroe County correctional officers, Nurse Amber Fennigkoh, and Nurse Practitioner Lisa Pisney failed to identify signs of angina during Ms. Boyer's detention in the Monroe County, Wisconsin jail. (3:20-cv-01123, ECF No. 161, ¶¶ 30, 37; 3:22-cv-00723, ECF No. 45, ¶¶ 55, 62.) Defendant ACH contracted with USA Medical to provide health care provider staffing in the Monroe County Jail. (3:20-cv-01123, ECF 157, ¶¶ XX, XXI.) Defendant USA Medical employed Nurses Pisney and Fennigkoh. (*Id.*, at ¶ XXI.)

Plaintiff's essential claim in both actions is straightforward: Plaintiff alleges Ms. Boyer died from cardiac arrest after Monroe County correctional officers, Nurse Fennigkoh, and Nurse Practitioner Pisney allegedly provided negligent care to Ms. Boyer that rose to the level of unconstitutional neglect. (3:22-cv-00723, ECF No. 45, ¶¶ 175, 196-98; 3:20-cv-01123, ECF No. 161, ¶¶ 150, 175-77.) Plaintiff has also extended his claims against Defendants ACH and USA Medical by alleging 42 U.S.C. § 1983 *Monell* claims

of unconstitutional corporate policies and practices of ACH, and that USA Medical operates under the policies and practices of ACH. (3:22-cv-00723, ECF No. 45, ¶¶ 34, 37.) Plaintiff further makes allegations that Nurse Fennigkoh and Nurse Practitioner Pisney were constrained and/or directed in the exercise of their nursing judgment by the policies and practices of ACH. (*Id.*, ¶¶ 28-29, 35-37.)

A.    **Plaintiff's Allegations and Claims in *Boyer II*.**

1.    **Constitutional and State-Law Claims against Drs. Johnson and Schamber.**

The causes of action explicitly stated in the *Boyer II* Amended Complaint against Defendants Drs. Johnson and Schamber include:

- Count I – "42 U.S.C. § 1983  - Denial of Medical Care;"

- (Count II is "reserved" in this matter);

- Count III – "Medical Malpractice;"

- Count IV – "Survival;"

- Count V – "Wrongful Death;"

- Count VI – "Intentional Infliction of Emotional Distress;" and

- Count VII – "Negligent Infliction of Emotional Distress."

(3:22-cv-00723, ECF No. 45.)

However, Plaintiff's Amended Complaint in *Boyer II* does not allege any facts to support any claim that Drs. Johnson and/or Schamber, or any USA Medical employees other than Pisney and Fennigkoh, were, at times relevant to Plaintiff's claims, aware of Ms.

5

Boyer, aware of her alleged serious medical needs, that they failed to act in response to such needs, or that they were involved in Ms. Boyer's medical care in any way. (*See id.*)

### 2. Plaintiff's Allegations in *Boyer II* Relevant to Plaintiff's Alter-Ego Claims to Pierce Defendant USA Medical's Corporate Veil.

The Amended Complaint in *Boyer II* includes many allegations purportedly relevant to a claim to pierce USA Medical's corporate veil to hold Dr. Johnson, Dr. Schamber, and even ACH (which is not a Defendant named in *Boyer II*) liable as alleged alter-egos of USA Medical, including:

- allegations that Defendants Drs. Johnson and Schamber were shareholders and/or officers of USA Medical during the events at issue in this case (*Id.*, ¶¶ 16, 17, 18, and 19);

- allegations regarding USA Medical's incorporation (*Id.*, ¶¶ 21, 24, 26);

- allegations regarding USA Medical's *current* capitalization, insurance coverage, corporate form, and business model (*Id.*, ¶¶ 14, 20, 21, 22, 23, 25, 27);

- allegations regarding USA Medical's contracts with ACH to provide health care providers to perform services in jails (*Id.*, ¶¶ 20, 27, 30) ;

- allegations regarding the relationship between USA Medical and ACH (*Id.*, ¶¶ 15, 27, 28, 30, 34, 37);

- allegations that *ACH* exercises control over the manner in which USA Medical's employees, including Dr. Schamber, perform their duties (*Id.*, ¶¶ 28, 29);

- allegations that USA Medical is the "alter-ego" of *ACH*, and Drs. Johnson and Schamber (*Id.*, ¶¶ 32, 38);

- allegations that *ACH*, and Drs. Johnson and/or Schamber "exercises [sic] complete domination" over USA Medical's finances, policy, and business practices." (*Id.*, ¶¶ 33); and

- allegations that (1) "*ACH* used its control over USA Medical to commit the wrongs alleged [the Amended Complaint]," and (2) that "*ACH's* control over USA Medical caused the injuries alleged in [the Amended Complaint]" (*Id.*, ¶¶ 35, 36 (emphasis added).)

The Amended Complaint does not allege ACH has ever had any ownership stake in USA Medical & Psychological Staffing. S.C. (*See id.*) Moreover, the Amended Complaint could not have been amended to truthfully allege that ACH has ever had an ownership interest in USA Medical because, as a Wisconsin service corporation, each of USA Medical's shareholders must be a licensed healthcare professional. *See* Wisc. Stat. § 180.1911(1).

The Amended Complaint also does *not* allege that that Drs. Johnson and/or Schamber used their alleged "complete domination" and/or "control" over USA Medical to "commit the wrongs alleged" in the Amended Complaint.[3] (*See id.*)

The Amended Complaint also does *not* allege that the alleged "complete domination" and control of USA Medical by Drs. Johnson and/or Schamber "caused the injuries alleged in [the Amended Complaint]." (*See id.*)

**B.    Plaintiff's Allegations in *Boyer I* Relevant to Apparent Alter-Ego Claims to Pierce ACH's Corporate Veil to Hold Dr. Johnson Liable.**

The Fourth Amended Complaint in *Boyer I* also includes many allegations that, with respect to Dr. Johnson, appear to only be relevant to a claim to pierce ACH's corporate veil to hold him personally liable, including, but not necessarily limited to:

---

[3] The Amended Complaint instead only alleges that "*ACH* used its control over USA Medical to commit the wrongs alleged [the Amended Complaint]," and that "*ACH's* control over USA Medical caused the injuries alleged in [the Amended Complaint]" (*Id.*, ¶¶ 35, 36 (emphasis added).)

- allegations that "ACH is a closely-held corporation, owned and controlled by *Norman Johnson* and his family (or entities controlled by these persons)." (3:20-cv-01123, ECF No. 161, ¶ 124 (emphasis added).);

- allegations that ACH "lacks sufficient capital assets to cover large verdicts," is undercapitalized, "without sufficient . . . cash assets," and that "ACH is thinly capitalized, with profits paid out to its owners . . . every year, rather than maintained as cash on ACH's books to pay for judgments or settlements that are not covered by ACH's insurance policy." (*Id.* at ¶¶ 123, 125, 126, and 128.);

- allegations that "ACH and *its owners* effectively insulate themselves against large verdicts arising from their misconduct by rendering ACH damage-proof against claims substantially in excess of $1.5 million," that ACH has "insufficient insurance,"  that ACH is "[w]ithout sufficient insurance," and that ACH is "underisur[ed]" (*Id.* at ¶¶ 100, 101, 102, 103, 126, and 128 (emphasis added).); and

- that "ACH and its owners, including *Norman Johnson*, are alter egos of each other" and that "[j]ustice requires that ACH's corporate form should be disregarded. . . ." (*Id.* at ¶ 129 (emphasis added).)

## FACTS

### A.   Evidence Relevant to the Alter-Ego Claims Set Out Above:

#### 1.   Depositions of Dr. Johnson and ACH/USA Medical Corporate Designee Jamie Lynch, CFO.

At his deposition in these companion cases, Dr. Johnson testified about a prior lawsuit against ACH that resulted in a verdict of approximately $8.5 million, that ACH ultimately settled for approximately $4.5 million. (3:20-cv-01123, ECF No. 226, 3:22-cv-00723, ECF No. 110, March 21, 2024 Deposition of Norman Johnson, M.D., p.258, l.2-11.) Dr. Johnson further testified that insurance covered a portion of that settlement, that ACH paid the rest, that ACH had an additional line of credit of approximately $3 million that it could have accessed, but that it had not needed do so to pay the judgment, and that ACH likely could have paid the entire $8.5 million if it had needed to. (*Id.*, p.258, l.12-22.)

Plaintiff further took the deposition of Chief Financial Officer Jamie Lynch in these companion cases. Ms. Lynch testified that part of her responsibilities include working with ACH and USA Medical's insurance broker to procure professional liability insurance coverage. (3:20-cv-01123, ECF No. 227, 3:22-cv-00723, ECF No. 111, March 21, 2024 Deposition of Jamie Lynch, p.79, l.14-25; p.81, l.1-4.) Ms. Lynch testified, consistent with prior discovery in these companion cases, that ACH and USA Medical's per-incident professional liability coverage in Wisconsin is $1million. (*Id.*, p.81, l.11-13.) She further explained that although ACH and USA Medical are required by Minnesota law to have $1.5 million per-incident professional liability coverage with respect to their operations in Minnesota, through their broker, ACH and USA Medical tried, but were unable, to find professional liability insurance for correctional care above $1 million and have had to make up the $500k difference through self-insured retention (SIR). (*Id*., p.82, l.2-5; p.86, l.9-23; p.93, l.16-p.94, l.24; p.95, l.4-14.)

## 2.    Plaintiff's Expert-Opinion Evidence.

Plaintiff has identified no expert, and has disclosed no expected expert testimony, in support of his claims to pierce the corporate veils of USA Medical and/or ACH.

In these companion cases, Plaintiff originally identified, disclosed the opinions of, and presented for deposition Jeffrey Keller, M.D. as an expert in correctional and emergency medicine. At his deposition in these companion cases, Dr. Keller testified that from 1997 to 2021 he was the CEO and owner of Badger Correctional Care, a corporation that provided health care to detainees in jails in several counties in Idaho.  (3:20-cv-01123, ECF No. 225, 3:22-cv-00723, ECF No. 109, March 19, 2024 Deposition of Joseph Keller,

M.D., p.5, l.5-10; p.232, l.19-p.233, l.4.) Dr. Keller testified that in Badger's final years of operation, it carried professional liability insurance coverage of $1 million per incident, that he believed such coverage to be adequate, and that he never sought to obtain additional professional liability coverage. (*Id*., p.45, l.5-p.46, l.18; p.234, l.24-p.235, l.3.) Dr. Keller further testified that Badger carried zero cash in its accounts from one year to the next. (*Id*., p.235, l.9-25.) Dr. Keller further agreed that if a successful lawsuit by an inmate patient had resulted in a judgment in excess of Badger's per-incident insurance coverage, Badger would not have had sufficient capital to pay such judgment. (*Id*., p.236, l.8-16.) Finally Dr. Keller testified that although he was the sole shareholder of Badger's single share of stock, although that stock paid no dividends, although he no longer possessed corporate records that established Badger followed corporate formalities, and although he acknowledged the hypothetical possibility of insufficient capital to pay a judgment in excess of Badger's insurance coverage, that he nonetheless holds the opinion that at all times, Badger operated in good faith as a corporate business. (*Id*., p.237, l.7-p.238, l.15.)

Not surprisingly, Plaintiff later withdrew Dr. Keller as his expert and identified and disclosed the opinions of another correctional-care expert, Homer Venters, M.D. At his deposition in these companion cases, Dr. Venters testified he holds no opinions about whether ACH and USA Medical are facades for the operations of their dominant shareholders. (3:20-cv-01123, ECF No. 223, 3:22-cv-00723, ECF No. 107, January 9, 2025 Deposition of Homer Venters, M.D., p.203, l.23-p.206, l.6.)

### 3.    Written Discovery.

On February 6, 2024 Defendants USA Medical, Dr. Johnson, and Dr. Schamber served Interrogatories on Plaintiff, including Interrogatories seeking, in relevant part, the following:

- **<u>No. 7</u>:** Please identify all facts to support your allegations in Paragraph 22 of the Amended Complaint against the USA Medical Defendants that USA Medical lacks sufficient per-incident insurance."

- **<u>No. 8</u>:** "Please identify all facts to support your allegations in Paragraph 23 of the Amended Complaint against the USA Medical Defendants that USA Medical is undercapitalized."

- **<u>No. 10</u>:** "Please identify all facts to support your allegations in Paragraph 32 of the Amended Complaint against the USA Medical Defendants that "USA Medical is an alter-ego of ACH, Norman Johnson . . . and/or Travis Schamber."

- **<u>No. 11</u>:** "Please identify all facts to support your allegations in Paragraph 33 of the Amended Complaint against the USA Medical Defendants that 'ACH, Norman Johnson, Jillian Bresnahan, Wesley Harmston, and/or Travis Schamber exercises complete domination over USA Medical's finances, policy, business practices with respect to USA Medical's medical practice, such that USA Medical has no separate mind or existence from these persons.'"

- **<u>No. 12</u>:** "Please identify all facts to support your allegations in Paragraphs 123, 125, 126, and 128 of the *Fourth Amended Complaint against Defendant ACH* that ACH "lacks sufficient capital assets," "is thinly capitalized," is "[w]ithout sufficient . . . cash assets," or is otherwise allegedly undercapitalized."

- **<u>No. 13</u>:** "Please identify all facts to support your allegations in Paragraphs 100, 101, 102, 103, 126, 128 of the *Fourth Amended Complaint against Defendant ACH* that ACH lacks 'sufficient insurance and/or is underinsured.'"

- **<u>No. 14</u>:** "Please identify all facts to support your allegations in Paragraphs 96 and 125 of the *Fourth Amended Complaint against Defendant ACH* that ACH has prioritized profits for ACH's owners 'at the expense of the health and lives of people who are detained  in jails serviced by ACH' and of 'profits paid out to [ACH's] owners and their family members or to entities controlled by these persons) every year, rather than maintained as cash on ACH's books to pay for judgments and settlements that are not covered by ACH's insurance policy.'"

11

- **<u>No. 15</u>:** "Please identify any instances of which you are aware of ACH failing to pay any judgment."

- **<u>No. 16</u>:** "Please identify any instances of which you are aware of ACH failing to pay any settlement."

- **<u>No. 17</u>:** "Please identify all facts to support your allegations in Paragraphs 129 of the *Fourth Amended Complaint against Defendant ACH* that "ACH and its owners, including Norman Johnson, are alter egos of each other. . . ."

(Affidavit of John B. Casserly, Ex. 1, Interrogatories to Plaintiff, Nos. 7, 8, 10, 11, 12, 13, 14, 15, 16, and 17 (emphasis added).)

Also on February 6, 2024, Defendants USA Medical, Dr. Johnson, and Dr. Schamber served Request for Production of Documents upon Plaintiff in which they requested "any and all documents which support, were identified, or were referenced or referred to in answering" all of the above-described Interrogatories, and "copies of any and all documents that you intend to introduce into evidence at the trial of this action." (Casserly Aff., Ex. 2, Requests for Production of Documents to Plaintiff, Nos. 2 and 5.)

Plaintiff never served any answers or objections to the USA Medical Defendants' Interrogatories and never produced any documents or served any responses or objections to the USA Medical Defendants' document requests. Accordingly, Plaintiff has not produced any document evidence either in support of his claims to pierce USA Medical's corporate veil to hold Dr. Johnson, Dr. Schamber, and/or ACH liable as alleged alter-egos of USA Medical, or in support of his claims to pierce ACH's corporate veil to hold Dr. Johnson liable as an alleged alter-ego of ACH.

In contrast, in Responses to Request for Production of Documents from Plaintiff, USA Medical produced copies of:

- USA Medical's Articles of Incorporation; (Casserly Aff., Ex. 3, USA Medical Articles of Incorporation.)

- USA Medical's Bylaws; (Casserly Aff., Ex 4, USA Medical Bylaws.)

- USA Medical's Certificate of Incorporation from the State of Wisconsin; (Casserly Aff., Ex. 5,  Certificate of Incorporation.)

- Copies of minutes of annual meetings of shareholders; (Casserly Aff., Ex. 6, Minutes of Shareholder Meetings.) and

- Copies of minutes of annual meetings of directors. (Casserly Aff., Ex. 7, Minutes of Directors Meetings.)

With its Responses to Plaintiff's Request for Production of Documents, in *Boyer* I, ACH produced numerous corporate documents. (Casserly Aff., Ex. 8, Responses 20, 21, 24, 25.) Specifically, ACH produced copies of:

- ACH's Articles of Incorporation; (Casserly Aff., Ex. 9, ACH Articles of Incorporation.)

- ACH's Bylaws; (Casserly Aff., Ex. 10, ACH Bylaws.)

- Revisions to Bylaws; (Casserly Aff., Ex. 11, Revisions to Bylaws.)

- Organizational Action by Written Consent of the Shareholders; (Casserly Aff., Ex. 12, Organizational Action by Consent of Shareholders.)

- Organizational Action by Written Consent of the Directors; (Casserly Aff., Ex. 13, Organizational Action by Consent of Directors.)

- Written Consent of the Shareholders in Lieu of Annual Meetings; (Casserly Aff., Ex. 14, Written Consent of the Shareholders.) and

- Written Consent of the Directors in Lieu of Annual Meetings. (Casserly Aff., Ex. 15.)

## LEGAL STANDARD – RULE 56 SUMMARY JUDGMENT

The court must grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the non-moving party may not simply rely on the allegations in its pleadings to create a genuine dispute but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [its] favor[.]" *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

## ARGUMENT

I.   **PLAINTIFF HAS FAILED TO PRODUCE EVIDENCE TO ESTABLISH, OR EVEN TO SUFFICIENTLY PLEAD, *PRIMA FACIE* CLAIMS TO PIERCE USA MEDICAL'S CORPORATE VEIL TO HOLD DR. JOHNSON, DR. SCHAMBER, AND/OR ACH LIABLE ON A THEORY OF ALTER-EGO LIABILITY.**

   A.   **Choice Of Law Analysis Requires the Application of Wisconsin Law to Plaintiff's Alter-Ego Claims to Pierce the Corporate Veil of USA Medical.**

Federal courts generally look to the state of incorporation of the veiled corporate entity to determine whether the corporate form should be disregarded. *Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007). Plaintiff's Amended Complaint against USA Medical, Dr. Johnson, and Dr. Schamber alleged that USA Medical is a service corporation that engages in the practice of medicine, and as such, was incorporated to comply with laws governing ownership of corporations engaged in a licensed practice, such as medicine. (3:22-cv-00723, ECF 45, ¶¶ 14, 25, and 26.) In its Answer to the Amended Complaint, USA Medical admitted it is a service corporation, admitted that some of its employees are engaged in the practice of medicine, and admitted that USA Medical is in all respects in conformance with Wisconsin's laws regarding the

14

corporate practice of medicine. (3:22-cv-00723, ECF No. 45, ¶¶14, 25, 26; 3:20-cv-01123, ECF No. 157, ¶¶ VII, XVI, and XVII.) Wisconsin law applies.

B.    **Wisconsin Alter-Ego Liability.**

Wisc. Stat. § 180.0622 – Liability of shareholders, transferees and others – provides,

in relevant part:

> Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not *personally liable* for the *acts or debts* of the corporation, except . . . that a *shareholder may become personally liable by his or her acts or conduct other than as a shareholder.*

Wisc. Stat. § 180.0622(2) (emphasis added).

The provisions of Wisc. Stat. § 180.1915 govern professional relationships and

liability with respect to "service corporations." The statute provides, in relevant part:

> * * *

> A *shareholder, director, officer* or employee of a service corporation *is not personally liable for the debts* or other contractual obligations of the service corporation *nor for the omissions, negligence, wrongful acts, misconduct and malpractice of any person who is not under his or her actual supervision and control* in the specific activity in which the omissions, negligence, wrongful acts, misconduct and malpractice occurred.

> * * *

> Nothing in this section shall affect any of the following:

> * * *

> (2) The *personal liability of a shareholder, director, officer* or employee of a service corporation *for his or her own omissions, negligence, wrongful acts, misconduct and malpractice and for the omissions, negligence, wrongful acts, misconduct and malpractice of any person acting under his or her actual supervision and control* in the specific activity in which the omissions, negligence, wrongful acts, misconduct and malpractice occurred.

Wisc. Stat. § 180.1915 (emphasis added).[4]

---

[4] Wisc. Stat. § 180.1905 – Business corporation law applicable – provides:

Thus, the Wisconsin legislature has generally shielded corporate shareholders, including shareholders of service corporations, from liability for the acts of the corporation and its employees. *Miller v. Bristol-Myers Co.*, 161 Wis. 2d 683, 694, 468 N.W.2d 744, 748 (Ct. App. 1991), *aff'd as modified*, 168 Wis. 2d 863, 485 N.W.2d 31 (1992). The benefit of this separateness is to shield shareholders and parent corporations from contractual and *tort* liabilities of the corporation and/or subsidiary. *Id.*, 161 Wis. 2d at 694, 468 N.W.2d at 749.

As a general rule, Wisconsin's courts do not lightly disregard the "legal fiction" of a corporation's existence. *Consumer's Co-Op of Walworth County v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d, 211, 213 (Wisc. 1988). However, "corporate separateness" may be "disregarded when to observe it 'would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim.'" *Rasmussen v. General Motors Corp.,* 2011 WI 52, ¶ 25, 335 Wis.2d 1, 18, 803 N.W.2d 623, 631 (Wisc. Ct. App. 2011)

---

(1)  Other provisions of this chapter shall be applicable to service corporations, including their organization, and service corporations shall enjoy the powers and privileges and be subject to the duties, restrictions and liabilities of other stock corporations, except as provided in ss. 180.1901 to 180.1921 [the service corporation subchapter]. A service corporation may not engage in any business other than that for which it was specifically organized and for which its charter was granted.

(2)  Sections 180.1901 to 180.1921 control in the event of conflicts with any other provision of this chapter.

Wisc. Stat. § 180.1905.

(citation omitted). "The rule permitting piercing of the corporate veil ... *reaches wrongful actions for which no adequate remedy at law exists*." *Benjamin Plumbing, Inc. v. Barnes,* 156 Wis.2d 276, 283, 456 N.W.2d 628, 631 (Wisc. Ct. App. 1990) (emphasis added).

Wisconsin's courts follow the "alter ego" doctrine for determining whether to pierce the corporate veil. *Consumer's Co-Op,* 142 Wis.2d at 484, 419 N.W.2d at 217. Under Wisconsin law, this doctrine requires proof of three elements:

> (1) Control, *not mere majority or complete stock control*, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such *control must have been used by the defendant to commit fraud or wrong*, to *perpetrate the violation of a statutory or other positive legal duty*, or *dishonest and unjust act in contravention of plaintiff's legal rights*; and
>
> (3) The aforesaid control and breach of duty must proximately *cause the injury or unjust loss complained of*.

*Id.,* at 484, 419 N.W.2d at 217-18 (emphasis added).

The absence of any one of these three elements prevents piercing the corporate veil. *Consumer's Co-op*, at 485, 419 N.W.2d at 218.

## 1.    Prong #1 – Ownership and Control.

Although the focus of analysis under the first prong is on control, ownership is required. *See id.* ("not mere majority or complete stock control. . ."); *Milwaukee Toy Co. v. Industrial Commission of Wisc.*, 203 Wis. 493, 496, 234 N.W.2d 748 (Wisc. 1931) (stating "[a]lthough one individual owns all the stock he does not thereby become the corporation").

18

As this Court has noted, Wisconsin has *not* adopted the "single-business-enterprise doctrine" whereby a plaintiff may seek to recover from the assets of a separate corporate entity that is merely a "sister corporation" of the corporate defendant, i.e., a corporation engaged in the same business enterprise with the defendant corporation, but without a parent-subsidiary relationship. *Taurus IP, LLC v. Ford Motor Co.*, 569 F. Supp. 2d 1122, 1125-126 (W.D. Wis. 2008) ("Wisconsin has not adopted the single business enterprise doctrine.")

To determine the existence of control or "complete domination," Wisconsin's courts examine the extent to which the corporation followed or failed to follow corporate formalities. *Consumer's Co-op*, 142 Wis. 2d at 485, 419 N.W.2d at 218. For example, factors considered may include, but may not necessarily be limited to, whether the corporation conducted meetings, maintained corporate records, filed annual reports with the state, paid dividends, and whether siphoning of corporate funds by the dominant shareholder, or commingling of personal and corporate funds has occurred. *Discovery Techs, Inc. V. AvidCare Corp.*, 2005 Wisc. App. LEXIS 134, *11 (unpublished) (citing *United States v. Pisani*, 646 F.2d 83, 88 (3rd Cir. 1981)).

### 2.    Prong #2 – Control Used to Commit Wrong in Violation of Plaintiff's Legal Rights.

With respect to the second prong, a plaintiff seeking to pierce the corporate veil must prove that the control or "complete domination" resulting from failure to follow corporate formalities caused an injustice. In other words, the shareholder or parent corporation must have used the alleged control to commit some wrong, or to depart from

some legal duty, in violation of the plaintiff's legal rights. *Consumer's Co-Op,* 142 Wis.2d at 484, 419 N.W.2d at 217-18.

Wisconsin's courts consider whether a corporation was adequately capitalized *when it was formed* to be relevant with respect to analysis under this factor, but not determinative on its own. *Id.* In other words, Wisconsin's courts have considered capitalization *at formation* that is insufficient to cover the corporation's potential liabilities to be an indication that a corporation was formed as "a sham." *Id.*, at 488, 419 N.W.2d at 219 (citations omitted). Wisconsin's courts have explicitly rejected arguments made under the second prong that corporations are subject to a continuing requirement to *maintain* sufficient capitalization. *Id.*, at 486, 419 N.W.2d at 218 ("[W]e reject the respondent's contention that there is a continuing requirement to maintain an adequate level of capitalization. . . . [t]he adequacy of capital is to be measured as of the time formation of the corporation.") Wisconsin's courts have not set out any specific formula for determination of whether a corporation is or was adequately capitalized at formation. *Id.*, at 488, 419 N.W.2d at 219.

### 3.    Prong #3 – Causation.

The third prong requires a causal connection between the control/domination-caused injustice and the alleged injury. *Id.*, at 484 and 491, 419 N.W.2d at 217-19. For example, such claims appear to most frequently arise in cases where unpaid creditors of a corporation seek to pierce the corporate veil to instead recover from the personal assets of controlling shareholders or, in the case of wholly owned corporate subsidiaries, from the assets of the parent corporation. Such creditors must show not only that they are owed

money by the debtor corporation that they later discovered was undercapitalized *at formation*, but also that they *relied on the controlling shareholders' misrepresentations* made to hide undercapitalization when the creditor extended credit, thereby causing the creditors' loss. *See Cemetery Servs. Inc. v. Wisconsin Dep't of Regulation & Licensing,* 221 Wis. 2d 817, 826-27, 586 N.W.2d 191 (Wisc. Ct. App. 1998).

**B.**  **Plaintiff Has Failed to Produce Evidence to Establish a *Prima Facie* Claim to Pierce USA Medical's Corporate Veil.**

**1.**  **Prong #1 – Ownership and Control.**

With regard to Drs. Johnson and Schamber, although the evidence establishes both were shareholders of USA Medical at times relevant to Plaintiff's Complaint, Plaintiff has failed to produce evidence of the kind of control required by Wisconsin law to establish alter-ego liability. As set out in detail above, Plaintiff has produced no evidence, and in fact Plaintiff's Amended Complaint failed to make any allegations of, the kinds of specific failures to follow corporate formalities identified in the Wisconsin caselaw summarized above. *See e.g., Consumer's Co-op,* 142 Wis. 2d at 485, 419 N.W.2d at 218; *Discovery Techs, Inc. v. AvidCare Corp.*, 2005 Wisc. App. LEXIS 134, *11. For example, Plaintiff has produced no evidence, and made no allegations, regarding any failure to conduct corporate meetings, maintain corporate records, file annual reports with the state, or pay dividends. (*See* 3:22-cv-00723, ECF No. 45.) Further Plaintiff has produced no evidence and made no allegations regarding any alleged siphoning of USA Medical's corporate funds by a dominant shareholder, or that commingling of personal and corporate funds has occurred. (*See id.*)

In contrast, as set out in detail above, in response to Plaintiff's discovery requests, the USA Medical Defendants produced substantial evidence that USA Medical has followed corporate formalities.

In regard to Plaintiff's apparent claims to hold ACH liable in *Boyer II* on the theory ACH is the alter-ego of USA Medical, Plaintiff has failed to produce any evidence, or even to plead, that ACH ever held any ownership interest in USA Medical. As set out in detail above, Plaintiff never responded to the USA Medical Defendants Interrogatory No. 10 which sought evidence supportive of Plaintiff's allegation that ACH is an alter-ego of USA Medical. Further, in regard to ownership of USA Medical, Plaintiff's Amended Complaint alleged only that "USA Medical *operates* as a . . . subsidiary of ACH. . ." but *does not allege* that USA Medical *is* a subsidiary of ACH or that ACH has any ownership stake in USA Medical. (3:22-cv-00723, ECF No. 45, ¶ 30.) In their Answer to the Amended Complaint, Defendants herein specifically denied "USA Medical is a subsidiary of ACH." (3:20-cv-01123, ECF No. 157, ¶ XX.) Again, the Amended Complaint could not have been amended to truthfully allege that ACH has ever had an ownership interest in USA Medical because, as a service corporation, ACH could never have been a shareholder of USA Medical because, under Wisconsin law, each of its shareholders must be a licensed healthcare professional. *See* Wisc. Stat. § 180.1911(1). Finally, ACH cannot be liable as an alleged alter ego of USA Medical under the single-business-enterprise doctrine because Wisconsin has not adopted the doctrine. *See Taurus IP, LLC,* 569 F. Supp. 2d at 1125-1126.

Plaintiff's failure to establish this element alone mandates summary judgment of any and all claims to pierce USA Medical's corporate veil to hold Dr. Johnson, Dr. Schamber, or ACH liable for Plaintiff's claims against USA Medical in this action.

### 2.    Prong #2 – Control Used to Commit Wrong in Violation of Plaintiff's Legal Rights.

With respect to the second element of alter-ego liability under Wisconsin law, again as set out in detail above, Plaintiff has also failed to produce any evidence that Drs. Johnson and Schamber used any alleged control over USA Medical to commit some wrong in violation of Plaintiff's rights.

Further Plaintiff has failed to even plead such a claim. Plaintiff's Amended Complaint only alleges that "*ACH* used its control over USA Medical to commit the wrongs alleged in this complaint." (3:22-cv-00723, ECF No. 45, ¶35 (emphasis added).) The Amended Complaint *does not* allege that Drs. Johnson and Schamber used any alleged control (see II. B. 1. *Supra*) over USA Medical to commit "the wrongs" alleged in the Complaint. (3:22-cv-00723, ECF No. 45, ¶35.) In other words, the Amended Complaint entirely fails to plead allegations that could establish the second element of a claim to pierce USA Medical's corporate veil because it alleges that only ACH used its alleged control over USA Medical to commit alleged wrongs. *Consumer's Co-Op,* 142 Wis.2d at 484, 419 N.W.2d at 217-18.

Moreover, as set out in detail above, although invited to do so by USA Medical's Interrogatories Nos. 7, 8, 9, and 10, Plaintiff failed to produce any evidence at all in support of his allegations that:

23

- Drs. Johnson and Schamber exercised "complete domination over USA Medical's finances, policy, business practices with respect to USA Medical's medical practice. . .";

-  that USA Medical is "undercapitalized";

- that USA Medical "lack's sufficient per-incident insurance";

- or even that Drs. Johnson and Schamber are the alter-egos of USA Medical.

Plaintiff has also failed to produce any evidence that ACH and/or USA Medical had ever failed to satisfy any judgment or settlement.

Further, also as set out in detail above, the deposition testimony of Plaintiff' *initial correctional-medicine expert*, Dr. Keller, establishes that from 1997 to 2021 he owned and was CEO of Badger Correctional Medicine, a correctional-medicine corporation that provided care to detainee patients in multiple Idaho jails. Dr. Keller testified that Badger carried no more per-claim insurance than ACH/USA Medical and retained no assets on its books at the end of each fiscal year.

Additionally, as set out in detail above, the deposition testimony of Dr. Johnson, and CFO Jamie Lynch provide evidence that explains the corporate Defendants' current capitalization, and evidence that establishes that USA Medical and ACH have sought and been denied insurance coverage greater the $1 million per incident.[5]

---

[5] It is worth again noting that under Wisconsin law, current capitalization of a corporation is not, in fact relevant to this analysis. As explained above, undercapitalization of a corporation *at formation* is a factor that Wisconsin's courts may consider in analysis of the second element of the liability under the alter-ego doctrine. *Id.*, at 483-85, 419 N.W.2d at 217-18. The Amended Complaint makes conclusory allegations that USA Medical is *currently* undercapitalized but makes no allegations regarding USA Medical's capitalization at formation. (*See* 3:22-cv-00723, ECF No. 45, ¶¶ 21 and 23.)

24

Finally, there is no evidence that ACH and/or USA Medical have ever failed to pay a judgment or settlement in excess of their insurance coverage.

Plaintiff's failure to establish this element alone also requires summary judgment of any and all claims to pierce USA Medical's corporate veil to hold Dr. Johnson, Dr. Schamber, or ACH liable for Plaintiff's claims against USA Medical in this action.

### 3.        Prong # 3 – Causation.

As to the causation element of Plaintiff's apparent claim to pierce USA Medical's corporate veil, there is no evidence, and Plaintiff's Amended Complaint fails to allege, that Drs. Johnson and Schamber were a proximate cause of an injury to, or an unjust loss of, Plaintiff.

Plaintiff has not produced any evidence to support his apparent allegation that Drs. Johnson and Schamber's alleged control over USA Medical somehow caused Ms. Boyer's death. In fact, again, the Amended Complaint even fails to plead allegations that could establish this required element of Plaintiff's claim to pierce USA Medical's corporate veil because it alleges only that *ACH*, *not* Drs. Johnson and Schamber caused injury to Plaintiff. *Consumer's Co-Op,* 142 Wis.2d at 484, 419 N.W.2d at 217-18. The Complaint makes no effort to identify any specific act by either Dr. Johnson or Dr. Schamber, nor does it attempt to show that any such act caused Ms. Boyer's death.

Moreover, logically, even if Plaintiff had produced evidence that could establish the first and second prongs of Plaintiff's claims to pierce USA Medical's corporate veil, Plaintiff cannot establish loss that would satisfy this third prong of Wisconsin alter-ego

liability and justify the extraordinary remedy of piercing USA Medical's corporate veil to hold its shareholders liable unless and until a jury finds USA Medical liable and awards Plaintiff damages in excess of insurance limits.

Plaintiff's failure to produce evidence in support of, or even to plead allegations of facts that could establish, the third element of his alter-ego claim as to USA Medical's corporate veil, further requires summary judgment of all claims to pierce the corporate veil to hold Dr. Johnson, Dr. Schamber, and ACH liable for Plaintiff's claims against USA Medical in *Boyer II*.

## II.     THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S 42 U.S.C. § 1983 AND STATE-LAW CLAIMS AGAINST DRS. JOHNSON AND SCHAMBER.

### A.     There is No Evidence Drs. Johnson and Schamber Were Involved in Any of the Medical Care at Issue in this Case or Aware of, and Deliberately Indifferent to, any Alleged Serious Medical Need of Christine Boyer.

Liability under 42 U.S.C. § 1983 for unconstitutional medical care for pretrial detainees under the Fourteenth Amendment is subject to the standard of objective unreasonableness. *Miranda v. Cty. Of Lake* 900 F3d 335, 352 (7th Cir. 2018)  Plaintiff attempts to state a claim for Section 1983 "denial of medical care" against Defendants Drs. Johnson and Schamber in paragraphs 175-95 of the Amended Complaint in *Boyer II*. (3:22-cv-00723, ECF No. 45, ¶¶ 175-95.) In paragraphs 175-179, Plaintiff alleges generally that "Defendants" were aware of Ms. Boyer's serious medical needs and, either out of malice or through deliberate indifference, failed to address such needs, causing her death. (*Id.*, ¶¶ 175-79.) However, the Amended Complaint only specifically alleged facts that USA Medical's employees, Nurse Fennigkoh and Nurse Practitioner Pisney, were aware of

26

Boyer's medical status and allegedly failed to provide proper care. (*See id.*, ¶¶ 39-63.) Plaintiff's Amended Complaint in this action does not allege any facts, and Plaintiff has not produced any evidence to support, any claim that Drs. Johnson and Schamber were at any times relevant to Plaintiff's claims, aware of Ms. Boyer, aware of her alleged serious medical needs, or provided objectively unreasonable care. (*See id.*)

Likewise, although the Amended Complaint generally alleges that "Defendants" owed "a duty of care similar to medical professionals with similar qualifications. . ." and "Defendants" breached such duty of care, the *Boyer II* Amended Complaint does not allege any facts, and there is no evidence to support, any medical malpractice claim against Drs. Johnson and Schamber because there is no evidence either was involved in any way in the medical care at issue or even aware of Ms. Boyer at any time relevant to Plaintiff's malpractice claims. (*See id.*, ¶¶ 39-63, 196-98.) The Complaint does not allege, and there is no evidence, that either ever had a provider-patient relationship with Christine Boyer that could give rise to a duty of care, that they breached the duty of care in some way, or that their breach of duty was a proximate cause of her death.

For these reasons, Plaintiff's 42 U.S.C. § 1983 and medical malpractice claims against Drs. Johnson and Schamber must be dismissed on summary judgment.

B.  **Without Evidence in Support of His 42 U.S.C. § 1983 and Medical Malpractice Claims Against Drs. Johnson and Schamber, Plaintiff Cannot Maintain His State-Law Claims Against Them for Survival, Wrongful Death, or Intentional and/or Negligent Infliction of Emotional Distress.**

To establish *prima facie* claims against Drs. Johnson and Schamber in *Boyer II* for survival, wrongful death, and intentional and/or negligent infliction of emotional distress,

Plaintiff must establish Ms. Boyer's death was caused by unconstitutional conduct and/or negligent care for which each is personally liable. For the reasons set out above, there simply is no evidence to support *prima facie* causes of action for 42 U.S.C. § 1983 unconstitutional conduct and/or medical malpractice claims against Drs. Johnson and Schamber. Accordingly, Plaintiff has also failed to establish *prima facie* claims for survival, wrongful death, or intentional and/or negligent infliction of emotional distress against Drs. Johnson and Schamber.

III.    **PLAINTIFF HAS FAILED, IN *BOYER I*, TO PRODUCE EVIDENCE TO ESTABLISH, OR EVEN TO SUFFICIENTLY PLEAD, A *PRIMA FACIE* CLAIM TO PIERCE ACH'S CORPORATE VEIL TO HOLD DR. JOHNSON PERSONNALY LIABLE.**

A.    <u>**Choice of Law.**</u>

For the purposes of this Motion only, the USA Medical Defendants concede that Illinois law applies to Plaintiff's alter-ego claims to pierce ACH's corporate veil with respect to Dr. Johnson.

B.    <u>**Illinois Alter-Ego Liability.**</u>

Under Illinois law, a corporation's shareholders or owners, officers, and directors are generally not liable for the corporation's debts. *Fontana v. TLD Builders*, 840 N.E.2d 767, 775 (Ill. App. Ct. 2nd Dist. 2005). Corporate shareholders and/or owners are shielded from unlimited liability for corporate activities even when the corporation is closely held or has a single shareholder or owner. *Id*. However, Illinois courts court may pierce the corporate veil where the corporation is merely the "alter ego" or "business conduit" of

another person or entity. *Id*. Illinois courts will impose liability on persons or entities that use a corporation to "perpetrate fraud" or "commit an injustice." *Id*.

Illinois courts use a two-prong test to determine whether to pierce the corporate veil:

(1)  whether "unity of interest and ownership" is such that the distinction between the corporation and the "other person or entity" no longer exists; <u>and</u>

(2)  whether adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences.

*Fontana*, 840 N.E.2d at 775.

As to prong #1, the "unity of interest and ownership" prong, Illinois courts examine many factors, none of which are dispositive, including:

(1)  inadequate capitalization;

(2)  failure to observe corporate formalities;

(3)  failure to issue stock;

(4)  nonpayment of dividends;

(5)  nonfunctioning of the other officers or directors;

(6)  absence of corporate records;

(7)  insolvency of the debtor corporation;

(8)  commingling of funds;

(9)  diversion of assets from the corporation by or to a shareholder or other person or entity to the detriment of creditors;

(10)  failure to maintain arm's length relationships among related entities; and

(11)  whether, in fact, "the corporation is a mere facade for the operation of the dominant shareholders."

*Id*. at 778; *see also Fiumetto v. Garrett Enterprises*, 749 N.E.2d 992, 1005 (Ill. App. Ct. 2nd Dist. 2001); *In re Estate of Wallen*, 633 N.E.2d 1350, 1357-58 (Ill. App. Ct. 2nd Dist. 1994).

With regard to Prong #2, whether "adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences," Illinois courts have further described this second prong as encompassing "some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest." *Fontana*, 840 N.E.2d at 782 (quoting *Berlinger's, Inc. v. Beef's Finest, Inc.*, 372 N.E.2d 1043, 1048 (Ill. App. Ct. 1st Dist. 1978)).

**C.    Plaintiff Has Failed to Produce Evidence to Establish a *Prima Facie* Claim to Pierce the Corporate Veil of ACH.**

**1.    Prong #1 – Whether "Unity of Interest and Ownership" is Such that the Distinction Between the Corporation and the "Other Person or Entity" No Longer Exists.**

As set out in detail above, documents produced by ACH in discovery establish that ACH is structured and operates as a corporation, has observed corporate formalities, and kept corporate records. Further, ACH has produced ample deposition testimony evidence that rebuts Plaintiff's unsupported claim that ACH and Dr. Johnson are alter egos. The testimony of CFO Jamie Lynch and Dr. Johnson substantially addressed Plaintiff's baseless allegations regarding alleged "undercapitalization" and, by extension, allegedly inadequate professional liability insurance coverage.

In contrast, in the litigation of these companion cases, Plaintiff has produced no evidence that can satisfy the requirements of prong #1 of Illinois alter-ego liability test. For

this reason alone, dismissal on summary judgment is warranted of Plaintiff's claim to pierce ACH's corporate veil to hold Dr. Johnson liable as an alter ego of ACH.

> **2.    Prong#2 - Whether Adherence to the Fiction of a Separate Corporate Existence Would Sanction a Fraud, Promote Injustice, or Promote Inequitable Consequences.**

There is no evidence in these companion cases that could support the second element of Plaintiff's apparent claim to pierce ACH's corporate veil to hold Dr Johnson personally liable.

Plaintiff's entire alter-ego theory is centered on allegations that "ACH and its owners effectively insulate themselves against large verdicts arising from their misconduct by rendering ACH damage-proof against claims substantially in excess of $1.5 million," that ACH has "insufficient insurance," that ACH is "[w]ithout sufficient insurance," and that ACH is "underisur[ed]" (3:20-cv-01123, ECF No. 161 at ¶¶ 100, 101, 102, 103, 126, and 128.)

However, as set out in detail above, Plaintiff produced no evidence in support of these allegations, even when invited and required to do so by the USA Medical Defendants' discovery requests. Plaintiff further failed to identify any expert, or disclose any expert-opinion evidence, in support of such allegations. Again, Plaintiff's originally disclosed expert Dr. Keller acknowledged that the correctional-medicine corporation he owned and operated for many years maintained similar per-incident professional liability insurance coverage to that of ACH and carried zero cash reserves into every new fiscal year.

On the other hand, significant evidence suggests the complete absence of any "promotion" of any alleged "fraud," "injustice," or "inequitable consequences." For

example, ACH CFO Jamie Lynch's testimony establishes that ACH tried, but was not able, to obtain higher per-incident insurance coverage. Most importantly, there is no evidence ACH has ever failed to pay the entirety of any judgment or settlement and the testimony of Dr. Johnson established ACH settled a case far in excess of ACH's coverage without tapping into ACH's additional line of credit.

For these reasons, there are no genuine issues of material fact that preclude summary judgment as a matter of law of Plaintiff's claims to pierce ACH's corporate veil to hold Dr. Johnson liable as an alleged alter ego of ACH.

## <u>CONCLUSION</u>

For the reasons set out above, Defendants USA Medical, Dr. Johnson, and Dr. Schamber respectfully request the Court grant their Motion for Summary Judgment of: (1) Plaintiff's attempt to pierce the corporate veil of USA Medical to hold Dr. Johnson, Dr. Schamber, and ACH liable as alleged alter egos of USA Medical, (2) Plaintiff's 42 § 1983 and state-law claims against Drs. Johnson and Schamber, and (3) Plaintiff's claims to pierce ACH's corporate veil to hold Dr. Johnson liable as an alleged alter ego of ACH.

USA Medical, Dr. Johnson, and Dr. Schamber further join Defendant ACH's Motion for Summary Judgment of Plaintiff's Monell claims.

Dated: February 14, 2025            GERAGHTY, O'LOUGHLIN & KENNEY
Professional Association


By   */s/ John B. Casserly*                 
John B. Casserly (#1026968)
Mark W. Hardy (#1073554)
Wells Fargo Place, Suite 2750
30 East Seventh Street
Saint Paul, MN  55101
Phone:  (651) 291-1177
FAX:    (651) 291-9477
Email:  jcasserly@goklawfirm.com
hardy@goklawfirm.com
*Counsel for Defendants USA Medical and Psychological Staffing, S.C., Norman Johnson, M.D., Travis Schamber, D.O., Wesley Harmston and Jillian Bresnahan*